## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FAIRBANKS CAPITAL CORP. | * | |
| Plaintiffs | * | |
| vs. | * | CASE NO.:  AMD 02 CV 2587 |
| W. CRAIG KENNEY, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S POST HEARING REPLY IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants, W. Craig Kenney ("Kenney") and Brian Barr ("Barr") hereby reply in opposition to the Post Hearing Brief of Plaintiff's ("Fairbanks") Motion for Preliminary Injunction.

The reply will be based upon this Notice, the attached Memorandum of Points and Authorities, the pleadings and papers on file with this Court, as well as all oral and documentary evidence presented at the hearing on this Motion.


DATED: <u>March 27, 2003</u>

By: <u>   /s/ Barton J. Sidle</u>
Barton J. Sidle (#09315)
9515 Deereco Road
Suite 902
Timonium, Maryland 21093
(410) 560-2800
(410) 308-3035 (fax)


By: <u>   /s/ Peter B. Langbord</u>
Peter B. Langbord
FOLEY & MANSFIELD
595 E. Colorado Boulevard
Suite 418
Pasadena, California 91101
(626) 744-9359 (Office)
(626) 744-1702 (Fax)

Attorneys for Defendant
W. Craig Kenney

By:   */s/ Philip Friedman*
    Philip Friedman (# 22766)
    FRIEDMAN LAW OFFICES, PLLC
    1735 New York Avenue, N.W.
    Suite 500
    Washington, D.C. 20006
    (202) 661-3925
    (202) 331-1024

    Attorney for Defendant Brian Barr

## <u>TABLE OF CONTENTS</u>

Introduction ................................................................................................................................1

I.     FAIRBANKS HAS NOT MET THE BURDEN TO RECEIVE
      A PRELIMINARY INJUNCTION ...................................................................................2

     A.  Fairbanks is not suffering irreparable harm ..................................................................3

     B.  Fairbanks is unlikely to succeed on the merits of the underlying claims......................7

          1. Fairbanks is unlikely to succeed in its claim for trademark infringement as
            critical commentary is outside the scope of the Lanham Act .............................7

          2. The Defendants have not used the mark in a manner likely to confuse
            consumers ..........................................................................................................9

          3. Fairbanks' cybersquatting claim fails as a matter of law....................................12

     C.  The Issuance of an injunction is not in the public interest ...........................................15

II.    PLAINTIFF'S REQUESTED RELIEF IS OVERBROAD................................................15

     A.      Even if the injunction is granted, Defendants can still use the ..............................15
           terms "fairbankssucks.com" and "fairbankscapitalsucks.com"

     B.      Restrictions on the use of meta tags are inapplicable .............................................16

Conclusion ...............................................................................................................................17

# TABLE OF AUTHORITIES

CASES

Anheuser-Busch, Inc. v. L&L Wings, Inc., 962 F.2d 316 (4th Cir. 1992) ...................................10

Bally Total Fitness Holding Corporation v. Faber, 29 F.Supp.2d 1161
(C.D.Cal. 1998)...........................................................................4, 8, 9, 10, 11, 15, 17

Basicomputer Corp. v. Scott, 973 F.2d 507 (6th Cir. 1992) ...........................................................6

Bihari v. Gross, 119 F.Supp.2d 309 (S.D.N.Y. 2000)……………………………………16, 17

Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir.1977).............2, 3

Connection Distrib. Co. v. Reno, 154 F.3d 281 (6th Cir.1998).....................................................6

Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802 (4th Cir. 1991)..............................3

Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495 (4th Cir. 1981)...........................3

Fisons Horticulture, Inc. v. Vigo Industries, Inc., 30 F.3d 466 (3rd Cir. 1994) .......................9, 10

Great Eastern Resort Corp. v. Virtual Resort Solutions, LLC, 189 F.Supp.2d 469
(W.D.Va. 2002).......................................................................................................3

Hughes Network Systems v. Interdigital Communications Corp., 17 F.3d 691
(4th Cir.1994)..........................................................................................................3

L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26 (1st Cir.) cert. denied,
483 U.S. 1013, 107 S.Ct. 3254, 97 L.Ed.2d 753 (1987)................................................8

Lucent Technologies, Inc. v. Lucentsucks.com, 95 F.Supp.2d 528
(E.D.Va. 2000)..............................................................................4, 7, 9, 12, 16

Maxwell v. Fairbanks Capital Corp., (In re. Maxwell)  __ B.R. ___,
2002 WL 1586325 (Bankr. D. Mass. 2002)................................................................12

Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335 (4th Cir. 2001).............................................3

Moseley v. V Secret Catalogue, Inc., __ U.S. ___, 123 S.Ct.1115,
2003 U.S. Lexis 1945(2003) .......................................................................................4

New Kids on the Block v. News America Publishing, 971 F.2d 302 (9th Cir. 1992)....................7

Niton Corp. v. Radiation Monitoring Devices, Inc., 27 F.Supp.2d 102
(D. Mass. 1998)........................................................................................................16

Overstreet v. Lexington-Fayette Urban County Gov't., 305 F.3d 566 (6th Cir. 2002)...................6

P.E.T.A. v. Doughney, 463 F.3d 359 (4th Cir. 2001)....................................................................10

Playboy Enters., Inc. v. Calvin Designer Label, 985 F.Supp. 1220 (N.D. Cal. 1997) .................16

Playboy Enters. Inc. v. Welles, 7 F.Supp.2d 1098 (S.D. Cal. 1998) ............................................17

The Taubman Company v. Webfeats, 319 F.3d 770, 2003 U.S. APP. LEXIS 2105
(6th Cir. 2003) ......................................................................................3, 4, 5, 6, 7, 8, 9, 13, 15, 16

## RULES AND STATUTES

15 U.S.C. § 1125(a) ......................................................................................................................7

15 U.S.C. § 1125(c) ......................................................................................................................4

15 U.S.C. § 1125(d) ............................................................................................................7, 12, 13

## OTHER AUTHORITIES

*Berkeley Technology Law Journal Annual Review of Law and Technology: I. Intellectual
Property: C. Trademark: 1. Defenses: A) Fair Use: Bally Total Fitness Holding Corp. v. Faber,*
15 BERKELEY TECH. L.J. 229 (2000) ........................................................................................1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| FAIRBANKS CAPITAL CORP. | * | |
| Plaintiffs | * | |
| vs. | * | CASE NO.:  AMD 02 CV 2587 |
| W. CRAIG KENNEY, et al. | * | |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S POST TRIAL BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

**INTRODUCTION**

Despite Plaintiff's contentions, this case is solely about the right of Defendants W. Craig Kenney ("Kenney") and Brian Barr ("Barr") to speak freely regarding the legitimate harm they suffered at the hands of a large and powerful corporation.  Fairbanks Capital Corporation's ("Fairbanks") arguments suggesting otherwise are profoundly misplaced.

Historically, when a consumer was dissatisfied with a company's products or services, that consumer only had access to a few types of media to publicize his or her complaints.  The growth of the Internet, however, has made it much easier for dissatisfied consumers to criticize companies and have their complaints heard by a large audience.  See, *Berkeley Technology Law Journal Annual Review of Law and Technology: I. Intellectual Property: C. Trademark: 1. Defenses: A) Fair Use: Bally Total Fitness Holding Corp. v. Faber, 15 Berkeley Tech. L.J. 229 (2000)*. This is precisely what Defendants have done here.

Defendants' website, http://www.conti-fairbanks.com  (hereinafter "the Website"), was created as an online resource for persons harmed by Fairbanks.  The website does not serve as a

1

competitor of Fairbanks.  The Website is exactly what it purports to be: an internet resource for similarly aggrieved consumers.

Fairbanks now seeks a preliminary injunction to prevent Kenny and Barr from using its protected marks in the website.  Regardless of Plaintiff's arguments regarding the dominant portion of its mark, Fairbanks Motion for Preliminary Injunction fails as a matter of law.  First, Fairbanks fails to establish the factors necessary to receive a preliminary injunction as it has not shown any irreparable harm. Moreover, Fairbanks fails to demonstrate a likelihood of success on the merits of its underlying trademark infringement and cybersquatting claims.  Furthermore, public interest arguments favor Kenney and Barr's constitutionally protected free speech over Fairbanks desire to silence an effective critic.

Kenney and Barr's use of the disputed mark, if at all, is solely for consumer criticism and commentary and does not create any likelihood of confusion.  Fairbanks has presented no evidence to support its claim of any actual confusion caused by Kenney and Barr's use of their registered domain names.  They furthermore have shown no damages or actual harm they are incurring or have incurred because of the websites alleged improper use of protected trademarks.

Fairbanks' Anti-Cybersquatting Consumer Protection Act claim fails because the same facts that establish Kenney and Barr's fair use and free speech defense negate a finding of bad faith intent necessary to establish such a claim.

Finally, in the event the Court does impose a preliminary injunction, the requested relief is overbroad and beyond the scope of the original Motion.

## I.    FAIRBANKS HAS NOT MET THE BURDEN TO RECEIVE A PRELIMINARY INJUNCTION.

Preliminary injunctive relief requires balancing the four factors established in

Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189, 195-96 (4th Cir. 1977):

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2)

the likelihood of harm to the defendant if the request is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest.  See, Great Eastern Resort Corp. v. Virtual Resort Solutions, LLC, 189 F.Supp. 2d 469, 474 (W.D. Va. 2002).

"Preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.  Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991) (internal quotation marks omitted)). A party seeking preliminary injunctive relief faces the significant burden of clearly establishing entitlement to the relief sought. See, Hughes Network Systems v. Interdigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1994);" Great Eastern, 189 F.Supp.2d at 473-74.

Injunctive relief granted early in the course of litigation should indeed be the exception rather than the rule. As the Fourth Circuit has expressed, the hazard of granting a preliminary injunction is that it "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting in a certain way. "The danger of a mistake in this setting 'is substantial.'" Hughes, 17 F.3d at 693 (quoting Federal Leasing, Inc. v. Underwriters at Lloyd's, 650 F.2d 495, 499 (4th Cir. 1981)). Great Eastern, 189 F.Supp.2d at 473-474.

### A.  Fairbanks is not suffering irreparable harm.

The first factor the court must analyze in a request for a preliminary injunction is a balancing of irreparable harm to the parties should the relief be granted or denied. Blackwelder, supra.  When damages are economic in nature and fully compensatory monetarily, there is no potential for irreparable harm and the injunction should be denied.  The Taubman Company v. Webfeats, 319 F.3d 770 at *21-22, 2003 U.S. App. Lexis 2105 (6th Cir. 2003).

Fairbanks has produced no evidence of any actual damages and admitted at the hearing they have no such evidence. Days after the hearing on this motion the United States Supreme Court held that the complaining party must show objective proof of actual injury to the economic value of a famous mark in order prevail under a companion provision to the trademark infringement action at issue in this case. See, Moseley. v. V Secret Catalogue, Inc., 123 S.Ct.1115 at * 6, 2003 U.S. Lexis 1945.

In Moseley, after the lower court determined that there was no likelihood of confusion between "Victor's Little Secret" and "Victoria's Secret," the Court reversed the lower court's determination that there was a reduced standard of proof to prevail under the anti-dilution provisions of the Federal Trademark Dilution Act, 11 U.S.C. §1125(c)(1). Although acknowledging that proof of dilution may be difficult, "whatever difficulties of proof may be entailed, they are not an acceptable reason for dispensing with proof of an essential element of a statutory violation." Moseley at * 27.  No less is true here.

To begin with, the plaintiff has failed to even establish that the defendants have used the trademark in question. Notably, at the time this action was filed, the plaintiff sought to enjoin the defendants from using their registered trademark. That mark, introduced into evidence by the Plaintiff as Exhibit 1, is an owl with the term "Fairbanks" inscribed under the picture. From the outset, the Defendants URL did not employ this trademark. Unlike the multitude of infringement cases that address the use of a URL employing the identical name of the trademark in question, that is most certainly not the case in the action at bar.  Moreover, even where such cases employ the identical name of the trademark in question as a portion of the URL, the courts have routinely found there is no likelihood of confusion and no trademark infringement. See, Taubman; Lucent Technologies, Inc. v. Lucentsucks.com, 95 F.Supp.2d 528 (E.D.Va. 2000); Bally Total Fitness Holding Corporation v. Faber, 29 F.Supp.2d 1161 (C.D.Cal. 1998);

Here, the Defendants do not employ the term "Fairbanks", or "FairbanksCapital", or "FairbanksCapitalCorp" or any other term using Fairbanks – let alone Fairbanks with an owl – as the first term in its URL. Rather, the Defendants use the term "conti-fairbanks". Even after the defendants incorporated a news picture with the actual trademark in question and placed it within the body of the website, there is no ambiguity that the unflattering portrait had nothing to do with the official functions of the Plaintiff. Indeed, Plaintiffs themselves acknowledge that once this picture was incorporated into the defendants' website AFTER the filing of this action, there was no confusion concerning any association between the defendants' website and any of the commercial activities of the Plaintiffs. In short, by the Plaintiff's own admission, rather than creating any likelihood of confusion, the incorporation of the news story picture dispelled any confusion that may have arguably existed, but for which the plaintiff has failed to provide a scintilla of evidence in support.

> Q.   It's pretty clear to you that this is clearly not the Fairbanks Capital Corporation Web page.  Is it clear to you?
>
> A   Yes, it is clear to me.
>
> Q   Do you believe it would be clear to a typical borrower from Fairbanks that this is not the Fairbanks Capital Corporation Web page?
>
> A   Yes, especially with the new addition of the America's Poster Child image.
>
> Q   So that picture on there would make it pretty clear to anybody looking at that Web page that this is not the Fairbanks Capital Corporation Web page?
>
> A   Yes.

See, Sewell Deposition at 130-131

The recently decided <u>Taubman</u> case is strikingly similar to the case at bar.  In <u>Taubman</u>, Plaintiff was a developer planning to build a mall called "Willowbend."  The defendant

registered a series of related internet domain names.  Initially the registered names were non-derogatory and included "theshopsatwillowbend.com" and "shopwillowbend.com". After Taubman sued, Defendant then created a website using the domain names "taubmansucks.com" and "willowbendsucks.com" to serve as a running editorial on his battle with Taubman and its lawyers.  The new websites exhaustively documented his court proceedings, both through visual scans of filed motions, and first person narratives.  Taubman, 219 F.3d 770 at *3-4, 2003 U.S. App. Lexis at 2105.  Neither the initial nor the subsequent websites were conducting any business that competed with Taubman..

The Appellate Court dissolved the injunctions and held that because Defendant did not use Plaintiff's mark to sell competing goods, and because any damages would be economic in nature and fully compensable monetarily, there was no potential for irreparable harm. Taubman, 319 F.3d 770 at *21-22, referencing Overstreet v. Lexington-Fayette Urban County Gov't, 305 F.3d 566, 578 (6th Cir. 2002) (citing Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992)).

The Court went on to hold even if the content of the websites constituted commercial speech, absent a likelihood of confusion, there was no negative impact on the public interest caused by Defendant's use and that Free Speech concerns found the potential for irreparable harm to Defendant more likely should the injunction remain. Id. See, Overstreet, 305 F.3d at 578 (the potential for irreparable harm is present when it is constitutional rights that are being enjoined); see also, Connection Distrib. Co. v. Reno, 154 F.3d 281, (6th Cir. 1998)(the loss of constitutional rights for even a minimal amount of time constitutes irreparable harm).

Here, Kenney and Barr have not used the term in connection with "servicing performing mortgage loans" or other similar services where Fairbanks Capital has a legitimate right to use

the mark. More importantly, however, is the fact that Kenney and Barr have merely used the

word "fairbanks" as part of their message of commentary and criticism of the Fairbanks Capital

Corporation. The subject of Kenney and Barr's constitutionally protected speech is Fairbanks

Capital's loan servicing practices. Trademark law is not construed so broadly to prevent the

exercise of free speech to communicate messages regarding a mark itself. See, New Kids on the

Block v. News America Publishing, 971 F.2d 302 (9th Cir. 1992). Accordingly, the irreparable

harm Kenny and Barr face, as a matter of law, far surpasses any theoretical harm Plaintiff may

incur. Taubman, supra.

### B. Fairbanks is unlikely to succeed on the merits of the underlying claims.

Fairbanks' claims against Kenney and Barr are for trademark infringement. Specifically,

false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a) and violation of the Anti-

Cybersquatting Consumer Protection Act, 11 U.S.C. §1125(d). Fairbanks alleges that the

Website is designed to suggest that it is a product of or otherwise originated or sponsored by

Fairbanks, and is likely to cause confusion or mistake or to deceive others as to the origin of the

website. Fairbanks further contends that Kenney and Barr's use of the Fairbanks mark in various

additional domain names Kenney has registered diverts actual or potential Fairbanks customers

to the Kenney Website and causes consumer confusion about the source of the Website. See,

Complaint at ¶ 34.

### 1. Fairbanks is unlikely to succeed in its claim for trademark infringement as critical commentary is outside the scope of the Lanham Act.

Effective critical commentary does not give rise to a cause of action under the Trademark

Act. Lucent Technologies, Inc. v. Lucentsucks.com, 95 F.Supp.2d 528, 535-36 (E.D.Va. 2000)

("Defendant argues persuasively that the average consumer would not confuse Lucentsucks.com

with a web site sponsored by plaintiff."); <u>See</u>, <u>Bally Total Fitness Holding Corporation v. Faber</u>, 29 F.Supp.2d 1161 (C.D.Cal. 1998); <u>see also</u>, <u>Taubman</u>, supra

In <u>Bally</u>, the defendant operated a web page called "Bally Sucks," a protest site devoted to consumer complaints and criticism about Bally Total Fitness Holding Corporations' fitness centers. <u>Bally</u>, 29 F.Supp.2d at 1162. When visiting Faber's site, Bally's distinctive trademark appeared with the word "sucks" emblazoned upon it and below the site read "Bally Total Fitness Complaints! Un-authorized." <u>Id</u>. Among other things, the site featured instructions on how to cancel an account with Bally's Fitness Centers, editorial criticism about the company, and a "complaint guest book" where former and current Bally customers can air their protests against the fitness chain. <u>Id</u>. at 1162, 1166.

The court, in granting Defendant's Motion for Summary Judgment reasoned that the two sites could not be confused because Faber used the Bally mark in the context of consumer criticism, communicated that the site was unauthorized and not Bally's official site, and did not significantly add to the large volume of information that the average user would have to sift through in performing an average internet search. <u>Id</u>. at 1165. The court further reasoned that Faber could not exercise his constitutional right to publish critical commentary about Bally without referencing Bally. <u>Id</u>. The court refused to accept Bally's trademark infringement claim because by doing so would eclipse Faber's First Amendment rights. <u>Id</u>. at 1166 (<u>citing</u> <u>L.L. Bean, Inc. v. Drake Publishers, Inc.</u>, 811 F.2d 26 (1st Cir.) <u>cert</u>. <u>denied</u>, 483 U.S. 1013, 107 S.Ct. 3254, 97 L.Ed. 2d 753 (1987) (reversal of injunction enjoining publication of parody of L.L. Bean catalogue on First Amendment grounds.)

The 6th Circuit in <u>Taubman</u> adopted the same reasoning. The Court held that "although economic damage might be an intended effect of [Defendant's] expression, the First Amendment protects critical commentary when there is no confusion as to source, even when it involves the

criticism of a business.  Such use is not subject to scrutiny under the Lanham Act." <u>Taubman</u> 319 F.3d 770 at *21-22.

The exact same analysis of <u>Bally</u> and <u>Taubman</u> applies here.  The Website is nothing more than a vehicle to criticize Fairbanks' loan servicing operations.  The Defendants' Website is analytically no different from those websites.  For example, the Website advises users on the welcome page that:

> "We are here to offer guidance and support to all Fairbanks customers, especially those who once had their mortgage with Conti or Citi <u>and are now suffering through dealing with Fairbanks</u>. . . . We offer sample letters you can use to protect yourself from improper application of late fees, forced insurance and property preservation fees.  In addition, we offer guidance with regard to escrow accounts, missing payments, default and foreclosure.  Your "rights are preserved" when you communicate in writing.  Please make full use of our resources and if you have any questions or comments please direct them to us using the "contact us."  Be sure to visit the "discussion forum" and post your comments.  <u>Read the horror stories of other customers in the "my story" section</u>. . . . Notice: this site is privately operated and is not connected in any way to any corporate entity.  <u>Its existence is protected by the freedom of speech provision in the United States Constitution</u>."

Complaint, Exhibit 2, pages 1-2, Plaintiff's hearing exhibit 2.

If anything, Defendants' argument is even stronger than <u>Bally</u>, <u>Taubman</u> and <u>Lucent</u>, as there, the defendants all used URL's beginning with the Plaintiff's exact name. Here, Defendants' URL does not begin with any of Plaintiff's marks but rather is *preceded* by the term "conti-".

### 2. The Defendants have not used the mark in a manner likely to confuse consumers

Fairbanks' allegations that even if Kenney and Barr are engaging in critical commentary, the website causes confusion should be rejected.  The standard to determine if a site is confusing is whether ordinary consumers are likely to conclude that they share a common source, affiliation, connection or sponsorship.  <u>Fisons Horticulture, Inc. v. Vigo Industries, Inc.</u>, 30 F.3d

9

466, 477 (3rd Cir. 1994); Anheiser-Busch, Inc. v. L.L. Wings, Inc., 962 F.2d 316, 318 (4th Cir.

1992); Bally, 29 F.Supp.2d at 1164.

There can be no doubt in viewing the first two pages of the Website that it is designed to

criticize Fairbanks' loan servicing operations.  No ordinary consumer, when viewing the page as

a whole, would determine that the Website is actually operated by Fairbanks.  Kenney and Barr,

in clear and precise language advise that the website is designed to help those consumers

"suffering through dealing with Fairbanks," openly details "horror stories" of others whose loans

are serviced by Fairbanks and maintains an unflattering photograph with a caption stating

"America's Poster Child for Servicing Abuse."  The only place on the website that contains

Plaintiff's logo is in connection with the aforementioned photograph.  The use of the logo and

mark here is analytically no different that that of the Bally court.

Moreover, even if the website is more than just effective critical commentary, Kenney

and Barr have not used the mark in any way likely to confuse consumers for a number of

reasons.  First, consumers accessing the Kenney website are quite different from consumers

accessing Fairbanks Capital's site.  The Kenney website's first page acknowledges that it is a

resource site for visitors who may have had their mortgages serviced by Fairbanks Capital.

Visitors to the Kenney website, whether intended or unintended, should be analyzed according to

the standard that the court in PETA itself relied upon, which is that of an "ordinary consumer."

See, P.E.T.A. v. Doughney, 463 F.3d 359, 366 (4th Cir. 2001) (quoting Anheuser-Busch, Inc. v.

L&L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992).

Furthermore, the PETA court stated, "to determine whether a likelihood of confusion

exists, a court should not consider 'how closely a fragment of a given use duplicates the

trademark,' but must instead consider 'whether the use in its entirety creates a likelihood of

confusion.'" Id. (quoting Anheuser-Busch, 962 F.2d at 319).  A look at even some pages of the

website, let alone its entirety, reveals the impossibility of a likelihood of confusion.
Furthermore, Plaintiffs cannot, with the exception of Defendant's limited testimony, produce any evidence of confusion.

Fairbanks cynically uses Kenney's deposition testimony to show evidence of confusion by stating that 20 to 25 people arrived at his site by accident.  See, Plaintiff's brief at page 5.
Unfortunately, Fairbanks fails to reproduce the balance of his answer, "**out of 190,000 visitors …**" Kenney Deposition at 101 (emphasis added).  Accordingly, at best, the only evidence of confusion Plaintiff can produce is that less than one out of 7,600 visitors (0.013%) have been confused.  Hardly a likelihood of confusion by an ordinary consumer.

Moreover, because Kenney and Barr are not in the loan servicing business, there can be absolutely no doubt that the Defendants use of various domain names will ever divert actual or potential Fairbanks customers [large financial institutions, with portfolios of loans worth billions of dollars] to the Website or cause loan servicing consumers to confuse the Website with Fairbanks.  There is no confusion between the services the Defendants' Website provides and the services the Fairbanks website provides.  See, Bally, 29 F.Supp.2d at 1163.

The website does not use the phrase "Fairbanks Capital" as the "title" of the site, nor uses the word "fairbanks" in any way other than to identify the subject matter of the message.
Although Fairbanks insists that initial confusion exists, a visitor to the Kenney website could think it was associated with any one of the many trademark registrations employing the word.  A visitor to the site would be well aware of the critical nature of the site.  The first page contains the disclaimer that it is an independently-owned and run website, as well as the link to "Horror Stories."  See, Plaintiff's hearing exhibit 2.  That page goes on to say "We are here to offer guidance and support to all Fairbanks customers, especially those who once had their mortgage with Conti or Citi, and are now suffering through dealing with Fairbanks." Id.  By the time a

visitor reads the first page, any alleged confusion is dispelled, and by the time the website has been explored "in its entirety," no shred of confusion could possibly exist as to the critical nature of the site.

That some of the content is unflattering to Fairbanks is a wholly inadequate reason for the Plaintiff's infringement claim.[1]  In fact, the website content and media coverage introduced at the hearing directly rebuts Plaintiff's hearing exhibit addressing its "first rate reputation as a leading servicer of underperforming loans."  See, Plaintiff's hearing exhibit 22 at ¶4; Defendant's hearing exhibit 8; See, e.g., Maxwell v. Fairbanks Capital Corporation, (In re Maxwell)  __ B.R. ___, 2002 WL 1586325, p. 13 (Bankr. D. Mass. 2002) ("Nevertheless, Fairbanks in a shocking display of corporate irresponsibility, repeatedly fabricated the amount of the Debtor's obligation to it out of thin air.")  Fairbanks "first rate reputation" has also captured the attention of the United States Senate.  "What [Fairbanks is] doing to these people is despicable, and it is absolutely wrong. And I want to urge the investigations to go forth to see if Fairbanks has done criminal acts, if they have possibly broken regulatory acts, and if that's so, I want them decertified, and I want them prosecuted, and I want redress for the victims." Senator Barbara Mikulski (D-Maryland), March 14, 2003.

### 3.  Fairbanks' cybersquatting claim fails as a matter of law.

Fairbanks contends that Kenney and Barr are liable under the Anti Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).  However, a successful showing by Defendants that the Website is critical commentary essentially eliminates the requisite elements of bad faith required under § 1125(d).  See, Lucent Technologies, Inc. v. Lucentsucks.com, 95 F.Supp.2d 528, 535-36, and 536 n. 9 (E.D. Va. 2000) ("a successful showing that Lucentsucks.com is

---

[1] It is further interesting to note Plaintiff makes no contention that any information on the website is defamatory or inaccurate.

effective parody and/or a site for critical commentary would seriously undermine the requisite elements for the causes of action at issue in this case.")  <u>Taubman</u>, <u>supra</u>.

Fairbanks has attempted to use the Anti-Cybersquatting Consumer Protection Act to validate its claim for infringement.  However, this argument is misplaced as one inspects essential elements for a claim under the Act, specifically a bad faith intent.

The Act specifically requires that the defendant have a *"bad faith intent to profit"* from the use of another's trademark and registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to the mark.  11 U.S.C. § 1125(d)(1)(A)(i-ii).  Kenney and Barr not only lack a bad faith intent to profit from Fairbanks Capital's mark, but they do not propose any commercial transactions through the website that would allow them any pecuniary gain.  Additionally, the site utilizes the combination of another word and "fairbanks."  Furthermore, even a cursory web search reveals hundreds of thousands of other websites using that word.  <u>See</u>, Defendant's hearing exhibits 1 through 6.

A trademark registration does not allow the trademark owner free reign over any and all uses of a mark.  A trademark owner must also contend with the powerful and compelling issues of free speech, and more recently, the vast world of cyberspace.  In this case, Kenney and Barr have shown that both of these factors are present.  They have utilized the world of cyberspace in the form of a registered website as a vehicle for commentary and criticism.  Defendants, in their role as consumer advocates do not satisfy any of the elements that a court may consider in establishing a defendant's bad faith intent.

One of the most important elements in a discussion of bad faith is the defendant's bona fide noncommercial or fair use of the mark via a website.  As is evident, the site is a resource for aggrieved consumers and former consumers of Fairbanks Capital.  The site offers opportunities

for commentary and criticism of a company, factual information for consumers, as well as resources for addressing loan-related problems.

Another important element for a court to consider is also absent in this case. There is no evidence that Kenney registered the names to sell them to Fairbanks Capital for financial gain.[2] In fact the opposite it true. Kenney registered the site with the intent to engage in a bona fide offering of resources for similarly situated consumers, and has constantly updated it to now offer a variety of information and online materials. The element of intent to divert consumers from the mark owner's online location to another site is also absent due to the fact that Fairbanks Capital's consumer base is quite different from any user that may utilize the Kenney website. Because the actual and potential consumers of the parties are completely different, there can be no intent to divert consumers from one site to the other.

The Website also is not an instrument for personal or pecuniary gain. Although some of the names registered by Kenney contain some variant of the term "fairbanks," the word is necessary to the purpose behind the site: to assist former and current borrowers whose loans are serviced by Fairbanks Capital. Kenney and Barr created a site to provide commentary, criticism, dialogue, and information associated with Fairbanks Capital. As is their right to do when merely identifying the subject of his discourse, they utilized the term "fairbanks" as part of the identifying name of the site. There is neither need nor obligation to identify them in the web address or in the body of the site itself, as the site does not provide any commercial services. Kenney and Barr are entitled to use the word to describe the subject matter of the site, and Fairbanks Capital's claim remains meritless.

---

[2] Again, Plaintiffs cynically attempt to introduce a letter regarding settlement negotiations already rejected as evidence at the hearing.

### C.  The issuance of an injunction is not in the public interest

Here, Kenney and Barr purposely chose to build a web site to address complaints, issues, and grievances, with Fairbanks.  Kenney and Barr are exercising their constitutionally protected right to publish critical commentary about Fairbanks. They cannot do this without referring to Fairbanks. The remedy for Fairbanks is not an injunction to suppress the message, but a rebuttal to the message or rather, more speech, not enforced silence. See, Bally, 29 F.Supp.2d at 1165-6; See also, Taubman, Supra.  (The loss of constitutional rights, even for a minimal amount of time, constitutes irreparable harm.)

### II.    PLAINTIFF'S REQUESTED RELIEF IS OVERBROAD.

In the event the Court does enter a preliminary injunction, the relief requested by Plaintiff through its brief is overbroad and beyond the scope of its original request.  In Fairbanks' original Motion, Plaintiff sought to enjoin Defendant from (1) using the domain name www.conti-fairbanks.com or any other domain names that contain the Fairbanks mark; and (2) using any post office addresses that contain Fairbanks' mark."  See, Motion for Preliminary Injunction at page 13.  They now seek to have Defendants cease using the terms "fairbankssucks.com" and "fairbankscapitalsucks.com."  They also seek to prevent Defendants from using any meta tags containing the terms Fairbanks, Fairbanks Capital Corp. or Fairbanks Capital.

### A.  Even if the injunction is granted, Defendants can still use the terms "fairbankssucks.com" and "fairbankscapitalsucks.com"

The word "Sucks" has entered the vernacular as a word loaded with criticism and is purely an expression of free speech to which the Lanham Act does not apply.  Taubman, 319 F.3d 770 at *20-21; Bally, 29 F.Supp.2d at 1164.  There is simply no authority for the court to enjoin Kenny and Barr's use of either of these two items. Under the analysis of Bally, Taubman

and <u>Lucent</u>, clearly, Plaintiff has no authority to stop Defendants from using terms with the word "sucks" appended to a domain name connected with Fairbanks.

A domain name is nothing more than public expression no different from a billboard or pulpit and Defendants have a right to express their opinions about Fairbanks so long as their speech is not commercially misleading.  <u>Taubman</u>, <u>supra</u>.  The use of the domain name is no different from Defendants shouting "Fairbanks sucks" from the rooftops.  <u>Id</u>.

### B.  Restrictions on the use of meta tags are inapplicable.

Plaintiff now, for the first time seeks to prevent Kenny and Barr from using a website with meta tags containing the term "Fairbanks" and other related permutations of its name. The few decisions holding that use of another entity's trademark in metatags constitutes trademark infringement all involved circumstances where the parties were direct competitors and used the other's mark to trick Internet users into visiting their website. <u>See</u>, <u>Bihari v. Gross</u>, 119 F. Supp. 2d 309, 321 (S.D.N.Y. 2000); <u>Niton Corp. v. Radiation Monitoring Devices, Inc.</u>, 27 F. Supp. 2d 102 (D. Mass. 1998). see also <u>Playboy Enters., Inc. v. Calvin Designer Label</u>, 985 F. Supp. 1220, 1221 (N.D. Cal. 1997) (preliminarily enjoining defendant's website, "www.playboyxxx.com" and repeated use of the "Playboy" trademark in defendant's metatags). Defendants in those cases were clearly attempting to divert potential customers from Plaintiff's website to their own for direct financial gain.  <u>Bihari</u>, supra.

Kenny and Barr are doing nothing of the sort, as they clearly are not direct competitors of Fairbanks. There is no trademark infringement where defendants use plaintiff's name in meta tags to index the content of their website. The meta tags are not visible to the websurfer.  They are used for search engines to help websurfers find certain websites. Much like the subject index of a card catalog, the meta tags give the websurfer using a search engine a clearer indication of the content of a website. <u>See</u>, <u>Bihari</u>, 319 F.Supp.2d at 321-323. The use of the term "Fairbanks"

16

in a meta tag is not an infringement because it references not only Plaintiff, "but it may also reference the legitimate editorial uses of the term Fairbanks contained in the text of defendants' website." Bihari, 119 F.Supp.2d at 322, quoting Playboy Enters. Inc. v. Welles, 7 F.Supp.2d 1098, 1104 (S.D. Cal. 1998).  To not allow the term "fairbanks" in meta tags would destroy one of the fundamental purposes of the internet by making it impossible to find any website.

Moreover, use of the "fairbanks" mark in the metatags of his websites is the only way Kenny can get his message to the public. See, Bally, 29 F.Supp.2d at 1165 ("Prohibiting [the defendant] from using Bally's name in the machine readable code would effectively isolate him from all but the most savvy of Internet users."). A broad rule prohibiting use of "Fairbanks" in the metatags of websites not sponsored by Plaintiff would effectively foreclose all discourse and comment about Plaintiff, including fair comment.

## CONCLUSION

For the foregoing reasons this Court should deny Plaintiff's request for a preliminary injunction as they fail to establish a likelihood of irreparable harm, fail to show a likelihood of success on the merits of the underlying claim and fail to show how the relief requested is in the public interest.

DATED: March 27, 2003

By: ___/s/ Barton J. Sidle___
   Barton J. Sidle (#09315)
   9515 Deereco Road
   Suite 902
   Timonium, Maryland 21093
   (410) 560-2800
   (410) 308-3035 (fax)

By:    /s/ Peter B. Langbord
    Peter B. Langbord
    FOLEY & MANSFIELD
    595 E. Colorado Boulevard
    Suite 418
    Pasadena, California 91101
    (626) 744-9359 (Office)
    (626) 744-1702 (Fax)
    Attorneys for Defendant
      W. Craig Kenney


By:    /s/ Philip Friedman
    Philip Friedman (# 22766)
    FRIEDMAN LAW OFFICES, PLLC
    1735 New York Avenue, N.W.
    Suite 500
    Washington, D.C. 20006
    (202) 661-3925
    (202) 331-1024

    Attorney for Defendant Brian Barr


## CERTIFICATE OF MAILING

    I HEREBY CERTIFY that on this 28th day of March 2003, a copy of the foregoing Post Hearing Reply in Opposition to Plaintiff's Motion for Preliminary Injunction and Memorandum of Points and Authorities was mailed, postage prepaid to:

Daniel J. Mulligan
Jenkins & Mulligan
660 Market Street
Third Floor
San Francisco, California 94104
Attorney for Defendant, Brian Barr

             By:    /s/ Barton J. Sidle
                 Barton J. Sidle

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

FAIRBANKS CAPITAL CORP.                     *

      Plaintiffs                               *

vs.                                         *        CASE NO.:  AMD 02 CV 2587

W. CRAIG KENNEY, et al.                     *

      Defendant                                *

     *    *    *    *    *    *    *    *    *    *    *

**<u>ORDER OF COURT</u>**

Upon Plaintiff's Motion for Preliminary Injunction, Defendant's response thereto,

hearings, post-hearing briefs and review of the record, it is this _____ day of

_____, 2003, by the United States District Court for the District of Maryland

hereby

ORDERED that the Plaintiff's motion be, and hereby is, DENIED.


                                      _____

                                      JUDGE,
                                      United States District Court