UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Northern Division

| | | |
|---|---|---|
| FAIRBANKS CAPITAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. AMD02CV2587 |
| | ) | |
| W. CRAIG KENNEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S REPLY TO DEFENDANTS' POST-HEARING REPLY IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Introduction

This reply responds to the brief filed 11 days late by Defendants W. Craig Kenney and

Brian Barr.  Although the Court ordered the parties to submit post-hearing memoranda on March

17, 2003, defendants waited until March 28, 2003—almost a month after the preliminary

injunction hearing—to submit their post-hearing brief.  Barr already had defaulted on the motion

for preliminary injunction against him by not filing a written opposition in the time allotted

under the rules of this Court.  Now Kenney, too, has defaulted on the motion against him by

filing this submission late.  Plaintiff Fairbanks Capital Corp. ("Fairbanks") has filed a motion for

entry of the preliminary injunction by default, and thus the Court need not even consider the

defendants' submission.  By virtue of their default, the Court should enter the preliminary

injunction in favor of Fairbanks.

Even if the Court were to consider the defendants' submission, the Court should still

enter the injunction.  Defendants fail to cite any controlling legal authority that their conduct

should not be enjoined.  They once again ignore the Fourth Circuit's holding in People for the

Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 366-67 (4th Cir. 2001) regarding the confusing nature of a domain name that contains a registered trademark. They have neglected altogether to cite authority on the issue of the dominant portion of Fairbanks' trademark, as the Court directed at the February 28, 2003 hearing. They rely on an irrelevant Supreme Court decision on trademark dilution—a claim not in this case—and non-controlling cases from other jurisdictions. They fail to identify any specific harm that they would suffer upon entry of the injunction. In addition, their brief is riddled with factual assertions unsupported by the record—which is not surprising because they did not present evidence at the hearing or elsewhere to support these assertions. Defendants also have abandoned their argument that Fairbanks delayed in seeking injunctive relief. Because the evidence of record and the law of this Circuit supports entry of the preliminary injunction under the Lanham Act and the Anti-Cybersquatting Consumer Protection Act ("ACPA"), the Court should enter the preliminary injunction in favor of Fairbanks.

I.    FAIRBANKS IS BEING IRREPARABLY HARMED BY THE DEFENDANTS' WEBSITE

Defendants argue that Fairbanks has not put forth evidence of "actual damages" and therefore cannot establish that it is being irreparably harmed. Defendants simply ignore the multitude of cases from courts in the Fourth Circuit as well as federal courts across the country, that a mere "tendency to deceive" satisfies the showing of irreparable harm required for a preliminary injunction under the Lanham Act. *See* Fairbanks Post-Hearing Brief at 3-4.

Kenney's reliance upon the recent Supreme Court case, Mosley v. V Secret Catalogue, Inc., 123 S. Ct. 1115 (2003), is completely misplaced. First, the Supreme Court's opinion in Mosley solely addressed the Federal Trademark Dilution Act of 1995 ("FTDA"), a statute not at issue in this case. Id. at 1119-20. Second, Mosley involved the quantum of proof necessary to

prevail on summary judgment under the FTDA—not for entry of a preliminary injunction under

the Lanham Act and the ACPA, the statutes at issue in this case. Id. The Supreme Court's

holding that a plaintiff must show proof of "actual dilution" is directly based on the explicit

language of the FTDA, which requires a showing that the defendant's use of a mark "'causes

dilution of the distinctive quality' of the famous mark." Id. at 1124 (quoting 15 U.S.C. §

1125(c)(1)) (emphasis in original). In contrast, the Lanham Act provides that any person who

uses a mark which "is likely to cause confusion. . . shall be liable in a civil action. . . ." 15

U.S.C. § 1125(a)(1) (emphasis added). The Mosley Court held that the text of the FTDA

"unambiguously requires a showing of actual dilution, rather than likelihood of dilution."

Mosley, 123 S. Ct. at 1124. Similarly, the Lanham Act unambiguously requires a showing of

only a likelihood of confusion. Thus, contrary to defendants' contentions, there is absolutely

nothing in Mosley or in the Lanham Act that requires a showing of "actual confusion."[1]

Nevertheless, Fairbanks has shown that the defendants' website not only has a "tendency

to deceive" Fairbanks' business associates and actual and potential customers by virtue of its

improper use of the Fairbanks trademark and the misleading content, but users actually have

been deceived by the website. First, defendants' use of the Fairbanks mark in the URL addresses

is confusing on its face, and in the Fourth Circuit, that alone is sufficient to establish a likelihood

of confusion. See People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 366-

67 (4th Cir. 2001) (finding use of plaintiff's mark in domain name of otherwise non-confusing

---

[1] Indeed, the issue of confusion is irrelevant to a dilution claim. Mosley, 123 S. Ct. at 1124 (there can be dilution "'regardless of the presence or absence of . . . likelihood of confusion, mistake, or deception.' § 1127"). Furthermore, it is worth noting that in settling a split among the Circuits, the Supreme Court in Mosley approved of the Fourth Circuit's interpretation of the FTDA in Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Development, 170 F.3d 449 (4th 1999) and rejected the Sixth Circuit's interpretation. Id. at 1121.

web page created likelihood of confusion). The confusion continues when an Internet user views the home page of the defendants' website with the title "The Fairbanks Resource Site." Although defendants have made cosmetic changes to the website's homepage in response to this case—a tacit admission that their previous conduct has violated Fairbanks' rights—Fairbanks continues to be harmed by the use of its mark in the URL addresses, the page titles, and the meta tags, in addition to the content of the website itself. Search engines rely on the URL addresses, page titles and metatags to locate the website, and as the evidence at the hearing indicated, many users arrive at the defendants' website through search engines.

Second, Kenney has acknowledged that the website has caused actual confusion—he admitted that around 25 users have come to his website "by accident." Kenney argues that this is a relatively small number compared to the alleged thousands of visitors to his website, but he conveniently ignores that there could be potentially tens of thousands of other users, unknown to Kenney, who were also confused and came to defendants' website by accident.

Defendants simply ignore <u>Doughney</u>, which is controlling authority for this Court, and cite two district court opinions and one Sixth Circuit case for the proposition that there is no likelihood of confusion through use of a trademark in a domain name. The district court cases— <u>Lucent Technologies, Inc. v. Lucentsucks.com</u>, 95 F. Supp. 2d 528 (E.D. Va. 2000) and <u>Bally Total Fitness Holding Corporation v. Faber</u>, 29 F. Supp. 2d 1161 (C.D. Cal. 1998)—which involve URLs containing "sucks" and thus are distinguishable on their face from the instant case, have been addressed in Fairbanks' previous filings. Briefly, the <u>Lucent</u> case was dismissed on jurisdictional grounds and any discussion of the trademark issues was pure <u>dicta</u>. In <u>Bally</u>, unlike here, it was abundantly clear from both the URL and the homepage that the website had no affiliation with the plaintiff, Bally Total Fitness. The court in <u>Bally</u> even acknowledged that

where a domain name contains a registered trademark, "there is a high likelihood of consumer confusion—reasonably prudent consumers would believe that the site using the appropriated name is the trademark owner's official site."  29 F. Supp. 2d at 1165 n.2 (the term "Bally Sucks" is not in the domain name; the website is accessible through the URL ("www.compupix.com/ballysucks").  Here, Kenney and Barr have used Fairbanks' registered mark in their domain name.

The third case, The Taubman Co. v. Webfeats, 319 F.3d 770 (6th Cir. 2003) also involved "sucks.com" domain names and is neither controlling nor instructive.  In Taubman, the district court entered injunctions enjoining the operation of the defendant's websites.  Id. at 772.  The Sixth Circuit, applying a different preliminary injunction standard than the Fourth Circuit's, dissolved the injunctions because it found that the websites were not using plaintiff's trademark in connection with goods and services and because there was not a likelihood of confusion.[2]  Id. at 775-78.  Significantly, the Sixth Circuit did not cite, distinguish, or otherwise address the reasoning in Doughney regarding initial confusion caused by use of a trademark in a domain name.  In Doughney, the Fourth Circuit found that the use of the mark "PETA," owned by the plaintiff People for the Ethical Treatment of Animals, in a domain name "www.peta.org," infringed on the plaintiff's trademark rights.  263 F.3d at 362-63.  Id.  The defendant argued that the website was a parody site made on behalf of "People Eating Tasty Animals."  Id. at 362.  Because the website was a parody, the defendant argued, there was no likelihood of confusion.

---

[2]  The Sixth Circuit applies an even balancing test to four factors: (1) likelihood of success on the merits; (2) potential for irreparable harm; (3) potential for adverse public impact; (4) potential harm to plaintiff outweighs the potential harm to the defendant.  Taubman, 319 F.3d at 774.  The Fourth Circuit, in contrast, weighs the factor on relative harm to the plaintiff and defendant as the most important factor.  Blackwelder Furniture v. Seilig Mfg. Co., 550 F.2d 189, 195 (4th Cir. 1977).

Id. at 366  The Fourth Circuit disagreed, noting that "an internet user would not realize that they were not on an official PETA web site until after they had used PETA's Mark to access the web page 'www.peta.org.'" Id. at 366-67 (quoting the district court opinion).

Similarly, there is nothing in the term "conti-fairbanks" that informs users that the defendants' website is not an official Fairbanks site.  The so-called "commentary" nature of the website does not become evident until the user is well into the defendants' website.  Under Doughney, defendants' domain names cause a likelihood of confusion and infringe Fairbanks' trademark.

II.    THE PRELIMINARY INJUNCTION DOES NOT IMPINGE ON DEFENDANTS' FREE SPEECH RIGHTS

Defendants claim that enjoining them from infringing Fairbanks' trademark will somehow interfere with their First Amendment rights.  The relief Fairbanks seeks in these motions, however, does not restrict or limit defendants' speech.  Kenney already has identified a new web address—www.servicingnews.com—which Fairbanks is not seeking to enjoin in these motions.  Defendants can exercise their free speech rights on that website.  The purpose of the preliminary injunction is solely to preclude infringement of Fairbanks' trademark rights.

In support of their free speech claims, Defendants again rely on Bally, Lucent, and Taubman.  Yet the infringement in each of those cases is different from the infringement here, and the courts in each of those cases analyzed the alleged infringement without regard for Doughney.  Under Doughney, the First Amendment does not provide carte blanche use of registered trademarks simply because the purpose is critical commentary or parody.  Id. at 366-67; see also OBH, Inc. v. Spotlight Magazine, Inc., 86 F. Supp. 2d 176 (W.D.N.Y. 2000) (finding infringement where defendants registered domain name using name of plaintiffs' newspaper, a registered trademark, and created website providing public forum for criticism and

parodying of the newspaper); <u>Planned Parenthood Federation of America, Inc. v. Bucci</u>, 1997
U.S. Dist. LEXIS 3338 (S.D.N.Y. 1997) (finding infringement where defendant used domain
name "plannedparenthood.com" to express views contrary to plaintiff's views).  Defendants can
express their views and exercise their free speech rights even with an injunction enjoining them
from infringing Fairbanks' trademark rights.

III.    THE PRELIMINARY INJUNCTION IS NOT OVERLY BROAD

      A.     The Injunction Should Enjoin Use of Fairbanks' Trademark in Meta Tags

      Defendants argue that the preliminary injunction should not prohibit use of Fairbanks'
trademark in the meta tags for their website because they are not direct competitors attempting to
divert customers from Fairbanks.  Although defendants may not be in the mortgage servicing
business, their intentions are in line with competitors of Fairbanks—that is, to harm Fairbanks
financially.  Numerous courts, including courts in this Circuit, have enjoined use of a trademark
in meta tags where the effect would be to divert customers and harm the plaintiff financially.
<u>See</u> <u>Brookfield Communications, Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036 (9th
Cir. 1999); <u>Playboy Enters., Inc. v. Asiafocus Int'l, Inc.</u>, No. Civ. A. 97-734-A, 1998 WL
724000 (E.D. Va. Apr. 10, 1998); <u>Niton Corp. v. Radiation Monitoring Devices, Inc.</u>, 27 F.
Supp. 2d 102 (D. Mass. 1998); <u>Playboy Enters., Inc. v. Calvin Designer Label</u>, 985 F. Supp.
1220, 1221 (N.D. Cal. 1997).  Just as defendants' use of Fairbanks' mark in their domain name
causes confusion and diverts users looking for Fairbanks' official website, so does use of

Fairbanks' mark in the meta tags.[3]  Accordingly, the injunction should include prohibition on use

of Fairbanks' mark in the meta tags.[4]

      B.     The Preliminary Injunction Should Enjoin Use of the "Sucks" Domain Names
                Containing Fairbanks' Mark

Defendants assert that "there is simply no authority for the court to enjoin Kenney and

Barr's use of either of [fairbankssucks.com or fairbankscapitalsucks.com]."  This is not true.

Numerous Administrative Panel Decisions of WIPO and National Arbitration Forum rulings

have found that "sucks" domain names are confusingly similar to the complainants' marks.  See

Koninklijke Philips Electronics N. V. v. In Seo Kim, WIPO Case No. D2001-1195

(philipssucks.com); Vivendi Universal v. Sallen, WIPO Case No. D2001-1121

(vivendiuniversalsucks.com) (majority decision); Access Resource Servs. v. Molle, NAF Case

No. FA0106000097750 (misscleosucks.com); The Salvation Army v. Info-Bahn, Inc., WIPO,

Case No. D2001-0463 (www.salvationarmysucks.com); ADT Services AG v. ADT Sucks.com,

WIPO Case No D2001-0213 (wwww.adtsucks.com); Diageo PLC v. Zuccarini, WIPO Case No.

D2000-0996 (guinness-sucks.com, guinness-really-sucks.com, etc.); Wal-Mart Stores, Inc. v.

MacLeod, WIPO Case No. D2000-0662 (wal-martsucks.com); Cabela's Inc. v. Cupcake Patrol,

NAF Case No. FA95080 (cabelassucks.com); Direct Line Group Ltd. v. Purge I.T., WIPO Case

No. D2000-0583 (directlinesucks.com); Dixons Group PLC v. Purge I.T., WIPO Case No.

---

[3]  Similarly, defendants' use of the mark in its page titles causes confusion and should be
enjoined.

[4]  Defendants reliance on Bihari v. Gross, 119 F. Supp. 2d 309 (S.D.N.Y. 2000) is misplaced.  In
that case, the plaintiff did not have her own website so the defendant's use of her company's
name (which was not a registered trademark) could not possibly divert users from the plaintiff's
own website.  Id. at 320.

D2000-0584 (dixonssucks.com). Copies of these decisions are submitted herewith as Attachments A and B.

Furthermore, as discussed above, the content of defendants' website is confusing. When entering the website, the user sees the title of the page -- "The Fairbanks Resource Site." Even if the user came to the site through the URLs fairbankssucks.com or fairbankscapitalsucks.com, there is still a likelihood of confusion regarding the purpose of the website. The URLs also serve to divert potential consumers from Fairbanks' own website.

IV.    DEFENDANTS ATTEMPT TO DEFEAT THE ACPA CLAIM SOLELY UPON
       UNSUBSTANTIATED ASSERTIONS

Defendants make numerous factual assertions in their brief without a single citation to the record. None of Kenney's exhibits submitted at the February 28 hearing provide support for these assertions. In an attempt to defeat Fairbanks' claim under the ACPA, for instance, defendants make statements regarding Kenney's intention in registering the domain name conti-fairbanks.com, their purpose in creating the website, and the use of the website for personal or pecuniary gain. Defs.' Post Hearing Reply at 14. Indeed, defendants go so far as to state that "Kenney and Barr created a website. . ." and "Kenney and Barr purposely chose to build a website. . . ." Id. at 14-15 (emphasis added). There is absolutely no evidence in the record regarding Kenney's reasons behind the website and certainly no evidence whatsoever regarding Barr's involvement, aside from his admission that he is a de facto partner of Kenney's. Hardly a consumer advocate, Barr appears to be unemployed until recently and testified at his deposition that he goes to the race track everyday. Barr Dep. (1/31/03) at 10, 39 (a copy of the relevant pages are submitted herewith as Attachment C).

In contrast, every fact relied upon by Fairbanks in its post-hearing brief is supported by a citation to the evidence of record. While Fairbanks put forth evidence of Kenney's use of the

website for pecuniary gain—and thus supporting the bad faith intent to profit element of the

ACPA claim—there is no evidence of record that Kenney has <u>not</u> profited from the website.[5]

Although Kenney and Barr now make these assertions in their brief, they could have testified at

the hearing or submitted affidavits, but chose to do neither.  Counsel for Kenney indicated that

Kenney would testify at the hearing, but he did not.  Barr was not even present at the hearing.

As detailed in Fairbanks' previous submissions and at the February 28, 2003 hearing, there is

evidence of record that shows that defendants registered a domain name containing Fairbanks'

mark with a bad faith intent to profit.  There is no evidence of record to contradict this showing.

The injunction also should be entered under the ACPA.

---

[5]  Defendants claim that the Court excluded from evidence Kenney's $3 million demand to shut
down the website.  This is incorrect.  The Court withheld a final ruling on the objection to this
evidence at the hearing.

<u>CONCLUSION</u>

For the foregoing reasons and the reasons identified in Plaintiff's Post-Hearing Brief in Support of Motions for Preliminary Injunction and the other pleadings and evidence of record, the Court should enter a preliminary injunction enjoining the defendant from (1) using the domain name www.conti-fairbanks.com, www.fairbankscapital.net, www.boa-fairbanks.com, www.fairbankscomplaint.com, www.bankofamericafairbanks.com, www.citi-fairbanks.com, www.fairbankscapitalcomplaint.com, www.equicreditfairbanks.com; www.fairbankssucks.com; www.fairbankscapitalsucks.com and any other domain names that contain the Fairbanks mark; (2) using any post office addresses that contain Fairbanks' mark; (3) using Fairbanks' mark in meta tags and page titles; and (4) infringing Fairbanks' mark in any other manner.


Respectfully submitted,

BAKER & HOSTETLER LLP


Dated: March 31, 2003          By: _____ /s/ *Mark I. Bailen* _____
                                   Frederick W. Chockley (Bar #04278)
                                   Gary Rinkerman
                                   Mark I. Bailen (Bar #13805)
                                   1050 Connecticut Avenue, NW, Suite 1100
                                   Washington, DC  20036
                                   (202) 861-1680
                                   (202) 861-1783 (Fax)

                                   Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Northern Division

| | | |
|---|---|---|
| FAIRBANKS CAPITAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. AMD02CV2587 |
| | ) | |
| W. CRAIG KENNEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2003 a copy of Plaintiff's Reply to Defendants' Post-Hearing Reply in Opposition to Plaintiff's Motion for Preliminary Injunction which was electronically filed in this case on March 31, 2003, was mailed via first class mail, postage prepaid, to:

Peter B. Langbord
Lynberg and Watkins
888 S. Figueroa St., 16th Fl.
Los Angeles, CA  90017

BAKER & HOSTETLER, LLP

By:_____/s/  Mark I. Bailen_____
Frederick W. Chockley (#04278)
Gary Rinkerman
Mark I. Bailen (#13805)
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C.  20036
(202) 861-1680
(202) 861-1783 (Fax)

Attorneys for Plaintiff