2 of 9 DOCUMENTS

WIPO Arbitration and Mediation Center

NOTICE: Administrative Panel Decisions originally provided by the Secretariat of
WIPO. The Secretariat of WIPO assumes no liability or responsibility with regard to the
transformation of this data.

Koninklijke Philips Electronics N.V. v. In Seo Kim

Case No. D2001-1195

WIPO Arbitration and Mediation Center ADMINISTRATIVE PANEL DECISION

*2001 UDRP LEXIS 1232*

November 12, 2001

OPINIONBY: Jonathan Turner, Sole Panelist

OPINION:
**[*1]  1. The Parties**
The parties are Koninklijke Philips Electronics N.V. of Groenenwoudseweg 1, 5621 BA Eindhoven, The Netherlands
("Complainant") and In Seo Kim of 213-4501 North Road Burnaby, B.C. V3N 4R7 Canada ("Respondent").
**2. The Domain Name and Registrar**
The domain name in dispute is www.philipssucks.com ("the Domain Name"). The Registrar is Network Solutions, Inc.
("the Registrar").
**3. Procedural History**
The Complaint was filed with the WIPO Arbitration and Mediation Center ("the Center") in electronic form on October
2, 2001, and in hard copy with attachments on October 9, 2001. The Registrar verified on October 8, 2001, that it is the
Registrar of the disputed Domain Name, that the Respondent is the Registrant, that its English language Service
Agreement version 5 applies to the registration and that it had received a copy of the Complaint. The Center's formal
requirements checklist was completed on October 9, 2001.
The Complaint was notified to the Respondent by email and fax on October 9, 2001, and by courier dispatched on the
same date to the addresses and number indicated for the Registrant and the Administrative, Technical and Billing
Contacts on the Registrar's **[*2]**  whois database, as well as to postmaster@philipssucks.com. Delivery to the email
address postmaster@philipssucks.com appears to have failed; delivery to the other addresses appears to have been
successful.
No Response having been received from the Respondent, the Center sent Notification of Respondent's Default on
October 30, 2001.
Having submitted a Statement of Acceptance and Declaration of Impartiality and Independence, Jonathan Turner was
appointed as the Single Member Panel on November 5, 2001.
Having reviewed the file, the Panel concludes that the Complaint complied with the applicable formal requirements,
was properly notified to the Respondent and has been submitted to a duly appointed Panel in accordance with the
Uniform Domain Name Dispute Resolution Policy ("the Policy") applicable to the Domain Name.
**4. Factual Background**
The Complainant is a very well-known manufacturer and supplier of electrical and electronic goods. Its primary
branding is its name "Philips" and a logo incorporating this name. It has registered "Philips" as a trademark in numerous
countries.

The Respondent registered the Domain Name on January 8, 2000, together with 14 other domain names ending [*3] in www.sucks.com, in most cases preceded by other well-known brands of electronic goods or cosmetics.

The Complainant wrote to the Respondent at the address recorded on the Registrar's whois database on January 15, 2001, asserting rights in the mark "Philips" and requesting discontinuance of the Respondent's use of this mark in the Domain Name. The Respondent did not reply to this letter.

Six email messages dated between May 4 and 9, 2001, criticizing the Complainant and its products have been posted at a website at www.philipssucks.com, which is said to be "under development". No other use appears to have been made by the Respondent of the Domain Name.

## 5. Parties' Contentions

The Complainant contends that the Domain Name is confusingly similar to its registered trademark "Philips", that the Respondent has no rights or legitimate interest in using it, and that the Respondent registered and is using the Domain Name in bad faith in order to sell it to the Respondent at a profit and to disrupt the Complainant's business. The Complainant refers in particular to the Respondent's registration of a series of domain names comprising a well-known brand followed by www.sucks.com.

The [*4] Respondent has not submitted a Response to these contentions.

## 6. Discussion and Findings

In accordance with paragraph 4 of the Policy, the Complainant must prove (i) that the Domain Name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights; (ii) that the Respondent has no rights or legitimate interests in respect of the Domain Name; and (iii) that the Domain Name has been registered and is being used in bad faith.

As to the first requirement, numerous cases of domain names comprising well-known marks followed by www.sucks.com have been considered under the Policy. In most of these cases, Panels have concluded that the domain names were confusingly similar to the Complainant's mark: see *The Salvation Army v. Info-Bahn, Inc.* WIPO Case No. D2001-0463 www.salvationarmysucks.com, *ADT Services AG v. ADT www.Sucks.com* WIPO Case No. D2001-0213 www.adtsucks.com, *Societe Accor contre M. Philippe Hartmann* WIPO Case No. D2001-0007 www.accorsucks.com, *TPI Holdings, Inc. v. AFX Communications a/k/a AFX* WIPO Case No. D2000-1472 www.autotradersucks.com, *Diageo plc v. John Zuccarini, Individually and t/a Cupcake Patrol* WIPO [*5] Case No. D2000-0996 www.guinness-really-sucks.com etc, *Standard Chartered PLC v. Purge I.T.* WIPO Case No. D2000-0681 www.standardcharteredsucks.com, *Wal-Mart Stores, Inc. v. Richard MacLeod d/b/a For Sale* WIPO Case No. D2000-0662 www.wal-martsucks.com, *Direct Line Group Ltd, Direct Line Insurance plc, Direct Line Financial Services Ltd, Direct Line Life Insurance Company Ltd, Direct Line Unit Trusts Ltd, Direct Line Group Services Ltd v. Purge I.T., Purge I.T. Ltd* WIPO Case No. D2000-0583 www.directlinesucks.com, *Dixons Group PLC v. Purge I.T. and Purge I.T. Ltd* WIPO Case No. D2000-0584 www.dixonssucks.com, *Freeserve PLC v. Purge I.T. and Purge I.T. Ltd.* WIPO Case No. D2000-0585 www.freeservesucks.com, *National Westminster Bank PLC v. Purge I.T. and Purge I.T. Ltd* WIPO Case No. D2000-0636 www.natwestsucks.com, *Wal-Mart Stores, Inc. v. Walsucks and Walmarket Puerto Rico* WIPO Case No. D2000-0477 www.walmartcanadasucks.com etc, *Vivendi Universal v. Mr. Jay David Sallen and WWW.GO247.COM, INC.* WIPO Case No. D2001-1121 www.vivendiuniversalsucks.com (majority decision).

However, the opposite conclusion was reached in *McLane Company, Inc. v. Fred Craig* [*6] WIPO Case No. D2000-1455 mclanenortheast.com mclanenortheastsucks.com, *Wal-Mart Stores, Inc. v. wallmartcanadasucks.com and Kenneth J. Harvey* WIPO Case No. D2000-1104 www.wallmartcanadasucks.com and *Lockheed Martin Corporation v. Dan Parisi* WIPO Case No. D2000-1015 www.lockheedsucks.com www.lockheedmartinsucks.com (majority decision).

This Panel considers that the first requirement of the Policy involves a mark for name comparison; in other words it is necessary to consider potential, as well as actual use of the domain name: see *Koninklijke Philips Electronics N.V. v. Cun Siang Wang* WIPO Case No. D2000-1778 www.philips-indonesia.com. Actual deceptive use is relevant to the second and third requirements, but not necessary to meet the first requirement.

On this basis, the Panel considers that the Domain Name is confusingly similar to the trademark "Philips" in which the Complainant undoubtedly has rights. Not all Internet users are English speaking or familiar with the use of "sucks" to indicate a site used for denigration. Furthermore, it is not unknown for companies to establish complaint or comment sites or areas of sites to obtain feedback on their products; accordingly, [*7] some people might suppose that a website of this nature at the Domain Name was operated by the Complainant.

It does not follow from this approach that the registration of any domain name comprising a famous brand followed by "sucks.tld" can be successfully challenged under the Policy. If such a domain name is genuinely registered and used for the purposes of criticism of the brand, the second and third requirements which the Complainant has to establish will not be met. The Policy is directed against abusive registration of domain names; not free speech.

2001 UDRP LEXIS 1232, *

As to the second requirement, in this case the Respondent has not countered the Complainant's contention that it has no legitimate interest in respect of the Domain Name. In particular, it does not appear to have operated the Domain Name at any rate until after the Complainant's letter of complaint of January 15, 2001, and the rudimentary site which it has put up does not appear to constitute genuine non-commercial use. The Panel is satisfied that the Respondent does not have a legitimate interest in respect of the Domain Name.

As to the third requirement, the Panel considers that the Domain Name was registered and is being used **[*8]** in bad faith, in particular for the purpose of sale at a profit to the Complainant. This can be inferred from the lack of genuine use of the Domain Name and the registration by the Respondent of a considerable number of similar domain names.

The Panel concludes that the Domain Name should be transferred to the Complainant.

**7. Decision**

The Panel decides that the domain name www.philipssucks.com should be transferred to the Complainant.

Jonathan Turner

Sole Panelist

WIPO Arbitration and Mediation Center

NOTICE: Administrative Panel Decisions originally provided by the Secretariat of WIPO. The Secretariat of WIPO assumes no liability or responsibility with regard to the transformation of this data.

Vivendi Universal v. Mr. Jay David Sallen and GO247.COM, INC.

Case No. D2001-1121

WIPO Arbitration and Mediation Center ADMINISTRATIVE PANEL DECISION

*2001 UDRP LEXIS 1265*

November 7, 2001

OPINIONBY: Alan L. Limbury, Presiding Panelist; Ian Barker, Panelist

OPINION:
[*1] **1. The Parties**
The Complainant is Vivendi Universal, a French corporation headquartered in Paris, France, represented by Jeffrey D. Neuberger, Esq. and Nancy J. Mertzel, Esq. and Brown Raysman Millstein Felder & Steiner LLP of New York, U.S.A. The Respondents are Mr. Jay David Sallen and GO247.COM, INC., both of 7 Fiske Terrace, Brookline, Massachusetts, U.S.A. and both represented by Mr. Sallen.

**2. The Domain Name and Registrar**
The disputed domain name is www.vivendiuniversalsucks.com.
The Registrar is Tucows, Inc., of Toronto, Ontario, Canada.

**3. Procedural History**
This is an administrative proceeding pursuant to the Uniform Domain Name Dispute Resolution Policy ("the Policy") adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN") on August 26, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy, approved by ICANN on October 24, 1999, ("the Rules") and the Supplemental Rules for Uniform Domain Name Dispute Resolution Policy ("the Supplemental Rules") of the WIPO Arbitration and Mediation Center ("the Center").

The Complaint was received by the Center by email on September 13, 2001, and in hardcopy on September 19, 2001. The Complaint [*2] was acknowledged on September 17, 2001. That day registration details were sought from the Registrar. On September 20, 2001, the Registrar confirmed that the disputed domain name is registered in the name of GO247.COM, INC. at the address mentioned above and that the Policy applies to the disputed domain name by operation of section 7 of the Registration Agreement.

On September 21, 2001, the Center satisfied itself that the Complaint complied with all formal requirements (including payment of the prescribed fee) and that day formally dispatched copies of the Complaint by post/courier (with enclosures) to the Respondents at the address as recorded with the Registrar and by email (without attachments). The Center also sent copies of the material by the same methods to alternative mail and e-mail addresses for the Respondents provided by the Complainant and to the Respondents' Administrative, Billing and Technical Contacts at the addresses recorded by the Registrar. The Center included with the material dispatched to the Respondents and to those contacts a letter dated September 21, 2001, containing notification of the commencement of this administrative proceeding, with copies of [*3] the Complaint without attachments) to the Complainant, the Registrar and ICANN.

The last day specified by the Center for a Response was October 11, 2001. A Response was filed on October 8, 2001, by email and on October 16, 2001, in hard copy.

The Complainant elected to have the case decided by a three-member Administrative Panel ("the Panel") and on October 30, 2001, the Center notified the parties of the appointment of the undersigned as panelists, each panelist having submitted a Statement of Acceptance and Declaration of Impartiality and Independence. On October 30, 2001, the Center transmitted the case file to the Panel and notified the parties of the projected decision date of November 13, 2001.

The Panel is satisfied that the Complaint was filed in accordance with the requirements of the Rules and Supplemental Rules; payment was properly made; the Panel agrees with the Center's assessment concerning the Complaint's compliance with the formal requirements; the Center discharged its responsibility under paragraph 2(a) of the Rules to employ reasonably available means calculated to achieve actual notice to the Respondents of the Complaint; the Response was filed within the time [*4] specified in the Rules and the Panel was properly constituted.

The language of the proceedings was English, being the language of the Registration Agreement.

### 4. Factual Background

The Complainant is a global communications company with businesses in music, the Internet, pay TV, telecommunications, multimedia, publishing and film. It was formed amid much publicity by the US$ 100 billion three-way merger in December 2000, of Vivendi SA (formerly *Compagnie Generale des Eaux*), the Seagram Company Ltd. (owner of the Universal Music Group and Universal Studios) and Canal + (the European pay television group). (Complaint, Ex. 5).

The Complainant (by itself or through a subsidiary) owns the registered trademarks VIVENDI, UNIVERSAL and VIVENDI UNIVERSAL (Complaint, Ex. 6, Ex. 7 and Ex. 8). The mark VIVENDI has been used by the Complainant since at least 1998. The mark UNIVERSAL has been used by the Complainant's entertainment company subsidiary, Universal City Studios, Inc., for the greater part of the 20th century. The mark VIVENDI UNIVERSAL has been used since at least June 2000, and was registered in France on December 22, 2000. (Complaint, Ex. 7).

The disputed domain name [*5] was registered by the Respondent GO247.COM, INC. on February 27, 2001. The Respondent Mr. Sallen is the chief executive officer, secretary and managing director of that company and the administrative contact for the disputed domain name. On July 26, 2001, the Complainant sent to the Respondents a cease and desist letter and on August 6, 2001, a follow-up letter. The only response was:

*"in due time. please remember that -- one of us is not making any money off of this process and therefore must attend to the business of making a living".*

As at the date of the cease and desist letter, the Respondents had made no use of the disputed domain name, which led to a page stating that the site was unavailable.

Following receipt by the Respondents of the cease and desist letter, Mr. Sallen tried without success on August 12, 2001, to change the servers on the disputed domain name (Response, Ex. 6) and again on August 16, 2001, stating *"time is of the essence"* (*ibid*). Eventually, the disputed domain name was directed to the page www.geektivism.com/vivendi.php on the website www.geektivism.com owned by a Mr. Miguel C. Danielson of Cambridge, Massachusetts, U.S.A., who declared [*6] (Response, Ex.7) that the page is a legitimate portion of his site, directed at criticizing the practices of the Complainant; that Mr. Danielson had allowed Mr. Sallen to direct the disputed domain name to that page and that *"no commercial purpose is allowed or intended for such use"* The page includes remarks concerning the current dispute.

### 5. Parties' Contentions

#### A. Complainant

The Complainant requests the Panel to direct that www.vivendiuniversalsucks.com be transferred to the Complainant and it invokes the following legal grounds as a basis for the relief sought:

**Identity or confusing similarity**

The disputed domain name is identical or confusingly similar to the Complainant's trademarks VIVENDI, UNIVERSAL and VIVENDI UNIVERSAL. The mere addition of the common/generic terms "sucks" and ".com" to the VIVENDI UNIVERSAL Mark does not have the effect of creating a new or different mark in which the Respondents have rights. See *Bloomberg L.P. v. Secaucus Group*, Case No. FA0104000097077 (National Arbitration Forum June 7, 2001) (stating that the addition of the terms "sucks" and ".com" to the Bloomberg mark does not have the effect of escaping confusing similarity).

**[*7] Legitimacy**

The Respondents have no legitimate interests in the disputed domain name.

**Bad faith**

The disputed domain name was registered and is being used in bad faith.

#### B. The Respondents

**Identity or confusing similarity**

The overwhelming majority of the "sucks" cases support the contention that the disputed domain name is not confusingly similar to the Complainant's trademark.

**Legitimacy**

The disputed domain name was registered for the legitimate and good faith purpose of creating a site critical of the Complainant's business practices, since shareholders and others have criticized the merger by which the Complainant was created (Response Ex. 1, 2 and 3).

The Respondents made a significant good faith effort to use the domain name as quickly as possible but were unable to do so for a significant period due to the registrar's failure to acknowledge the Respondent's registration in its database (Response Ex. 6).

**Good Faith**

The purpose of the Respondent's registration of the disputed domain name was to create a site for the free expression of criticism of Complainant's business practices.

**6. Discussion and Findings**

Under paragraph 15(a) of the Rules, [*8] the Panel must decide this Complaint on the basis of the statements and documents submitted and in accordance with the Policy, the Rules and any rules and principles of law that it deems applicable.

To qualify for cancellation or transfer, a Complainant must prove each element of paragraph 4(a) of the Policy, namely:

(i) the disputed domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights; and

(ii) the Respondent has no rights or legitimate interests in respect of the domain name; and

(iii) the disputed domain name has been registered and is being used in bad faith.

**Identity or confusing similarity**

Essential or virtual identity is sufficient for the purposes of the Policy: see *The Stanley Works and Stanley Logistics, Inc v. Camp Creek. Co., Inc.* (WIPO Case No. D2000-0113), *Toyota Jidosha Kabushiki Kaisha d/b/a Toyota Motor Corporation v. S&S Enterprises Ltd.* (WIPO Case No. D2000-0802) *and Nokia Corporation v. Nokiagirls.com a.k.a IBCC* (WIPO Case No. D2000-0102).

The Panel finds the disputed domain name is not identical to any of the Complainant's trademarks.

To ascertain the presence of confusing [*9] similarity, several ICANN panels have adopted principles of United States trademark law and weighed a number of factors. See *Diageo v. Zuccarini* (WIPO Case No. D2000-0996) (holding that "sucks" domain names are not immune from scrutiny as being confusingly similar and that each case must be considered in light of the facts presented). The panels in *Diageo* and *Wal-Mart Stores, Inc. v. Walsucks* (WIPO Case No. D2000-0477) both considered the likelihood of confusion factors set forth by the United States Court of Appeals for the Ninth Circuit in *AMF v Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979)* n1.

n1 In *Sleekcraft*, the Court of Appeals for the Ninth Circuit enumerated eight factors to be weighed on the question of likelihood of confusion between trademarks: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of product lines.

The learned panelist in *Diageo* applied the *Sleekcraft* [*10] factors with manifest hesitation as to whether this approach is appropriate under the Policy. In the course of his analysis, he exposed several instances in which the *Sleekcraft* factors for determining confusing similarity between a trademark and another trademark are inappropriate for determining confusing similarity between a trademark and a domain name.

This Panel prefers the view that the test of confusing similarity under the Policy, unlike trademark infringement or unfair competition cases, is usually confined to a consideration of the disputed domain name and the trademark: *Wal-Mart Stores, Inc. v. Richard MacLeod* (WIPO Case No. D2000-0662); *Cimcities, LLC v. John Zuccarini d/b/a Cupcake Patrol* (WIPO Case No. D2001-0491); *AltaVista Company v. S.M.A., Inc.* (WIPO Case No. D2000-0927); *Gateway, Inc. v. Pixelera.com, Inc (formerly Gateway Media Productions, Inc.)* (WIPO Case No. D2000-0109); *America Online Inc. v. Anson Chan* (WIPO Case No. D2001-0004) and *Playboy Enterprises International, Inc. v. Federico Concas, a.k.a John Smith, a.k.a. Orf3vsa* (WIPO Case No. D2001-0745).

Here, the disputed domain name incorporates, as its most prominent feature, [*11] the whole of each of the Complainant's trademarks VIVENDI, UNIVERSAL and VIVENDI UNIVERSAL together with the historically descriptive and, more recently, sometimes pejorative word SUCKS. What is the effect of that word on the otherwise immediate association with the Complainant likely to be aroused in the public mind by the words VIVENDI UNIVERSAL?

There is an unresolved disagreement between panels and, as here, amongst panelists, as to whether a www.[trademark]sucks.com domain name can ever be confusingly similar to the trademark to which the word sucks is appended. Panels which have found confusing similarity include *Wal-Mart Stores, Inc. v. Walsucks* (WIPO Case No. D2000-0477); *Direct Line Group Ltd. v. Purge I.T.* (WIPO Case No. D2000-0583); *Dixons Group PLC v. Purge I.T.* (WIPO Case No. D2000-0584); *Freeserve PLC v. Purge I.T.* (WIPO Case No. D2000-0585); *National Westminster Bank PLC v. Purge I.T.* (WIPO Case No. D2000-0636); *Standard Chartered PLC v. Purge I.T.*, (WIPO Case No. D2000-0681); *Cabela v. Cupcake Patrol*, NAF Case No. FA95080 (August 29, 2001); *Wal-Mart Stores, Inc. v. MacLeod* (WIPO Case No. D2000-0662); *Diageo v. Zuccarini* (WIPO Case [*12] No. D2000-0996); *Societe Accor v. M. Philippe Hartmann* (WIPO Case No. D2001-0007); *ADT Services AG v. ADT Sucks.com* (WIPO Case No. D2001-0213); and *Bloomberg L.P. v. Secaucus Group*, Case No. FA0104000097077 (National Arbitration Forum June 7, 2001).

The opposite view has essentially espoused a *per se* rule that a domain name created by the mere addition of "sucks" and the generic top level domain can never be confusingly similar to the complainant's trademark. In *Wal-Mart v. wallmartcanadasucks.com* (WIPO Case No. D2000-1104), the panelist concluded:

*"I do not see how a domain name including "sucks" ever can be confusingly similar to a trademark to which "sucks" is appended."* (p. 10).

Similarly, the panel in *Lockheed Martin v. Dan Parisi* (WIPO Case No. D2000-1015) stated:

*"Both common sense and a reading of the plain language of the Policy support the view that a domain name combining a trademark with the word "sucks" or other language clearly indicating that the domain name is not affiliated with the trademark owner cannot be considered confusingly similar to the trademark."* (p. 4).

A similar approach was taken in the recent case of *America* [*13] *Online v. Johnathan Investments, Inc., and AOLLNEWS.COM* (WIPO Case No. D2001-0918) in finding the domain name www.fucknetscape.com is not identical or confusingly similar to the trademark NETSCAPE.

This Panel, by a majority, is of the view that the addition of the word "sucks" to a well-known trademark is not always likely to be taken as *"language clearly indicating that the domain name is not affiliated with the trademark owner"*. Two examples of the use of the word "sucks" which do not so indicate, even to English speakers, are:

(1) the use of the words "sucks" purely descriptively, as in the advertising slogan "Nothing sucks like Electrolux" (If there were a website at www.electroluxsucks.com, it would be unlikely to be taken as unaffiliated with the company Electrolux); and

(2) the website of the band Primus, www.primussucks.com, so named after the album Suck on This (1990). (The website of the band's lead singer, Les Claypool, at www.lesclaypool.com, has a link to the www.primussucks.com website).

More importantly, it must be borne in mind that not all Internet users speak English as their mother tongue. In *Societe Accor v. M. Philippe Hartmann* (WIPO Case No. [*14] D2001-0007) the panel said:

<<...la Commission estime que dans le cas d'un public non anglophone, voire anglophone, mais peu habitue aux expressions familieres ou argotiques, bref, d'un public ignorant la signification du mot "sucks" en soi ou pour designer des sites de "cyberprotestation", la formule "accorsucks" ne signifie rien de plus que l'adjonction a la marque connue "accor" d'un suffixe denue de sens particulier et, donc est inapte a constituer un "tout indivisible" modifiant globalement la perception de la marque "accor" constituant les deux premieres syllabes de la sequence "accorsucks".

Cette situation a deja ete envisagee dans de precedentes Decisions. Par exemple, la Decision OMPI D2000-0636, National Westminster Bank, *a indique:*

*"Given the apparent mushrooming of complaints sites identified by reference to the target's name, can it be said that the registration would be recognised as an address plainly dissociated from the Complainant? In the Panel's opinion, this is by no means necessarily so. The first and immediately striking element in the Domain Name is the Complainant's name. Adoption of it in the Domain Name is inherently likely to lead some* [*15] *people to believe that the Complainant is connected with it. Some will treat the additional "sucks" as a pejorative exclamation and therefore dissociate it after all from the Complainant; but equally others may be unable to give it any definite meaning and will be confused about the potential association with the Complainant".*

De meme, la Decision OMPI D2000-0996, Diageo plc, *a releve:*

*"As the Internet extends far beyond the Anglophone world, a more difficult question arises as to whether non-English speaking users of the Internet would be confused into believing that such a site is owned and / or controlled by the Complainant. Because the word 'sucks' is a slang word with which all English speakers may not be familiar, this Administrative Panel concludes that there may well be circumstances where Internet users are not aware of the abusive connotations of the word and consequently associate the domain name with the owner of the trademark".*

*Dans ces conditions, la Commission estime que le public pourra penser que le nom de domaine en litige refere a un service en relation avec le Requerant et, des lors, le nom de domaine en cause sera semblable au point de* **[\*16]** *preter a confusion, a une marque sur laquelle le Requerant a des droits.*

*Ayant la conviction que le public en general et les internautes en particulier, n'etant pas tous anglophones et/ou avertis du sens du terme "sucks" dans le monde d'Internet, auront, pour certains, plutot le sentiment que "sucks" est un ajout banal et obscur a la marque "accor" passablement connue et que, des lors, www.accorsucks.com refere a un service du Groupe Accor, la commission constate que l'exigence du paragraphe 4 (a), (i) des Principes directeurs est satisfaite.>>*

By the same reasoning, being satisfied that certain members of the public in general and "Internauts" in particular, not being English speakers and/or aware of the meaning of the word "sucks" in the Internet world, would be likely to understand "sucks" as a banal and obscure addition to the reasonably well-known mark VIVENDI UNIVERSAL and that, accordingly, www.vivendiuniversalsucks.com refers to goods or services provided by the Complainant, this Panel, by majority, finds the requirements of paragraph 4(a)(i) of the Policy to have been met.

The Complainant has established this element.

**Illegitimacy**

The Complainant has not **[\*17]** authorized the Respondents to use any of its trademarks nor to register the disputed domain name. The Respondents are not known by the disputed domain name. They must have been aware of the Complainant's trademarks before registering the disputed domain name because their stated purpose was to criticize the Complainant.

It is common ground that no use was made of the disputed domain name between the date of registration, February 27, 2001, and the date when notice of the dispute was given to the Respondents by way of "cease and desist" letter on July 26, 2001. Nor have the Respondents demonstrated any preparations to use the disputed domain name during this period. Following receipt of that letter, the Respondents attempted with some urgency (*"time is of the essence"*) to make changes to the servers and directed the disputed domain name to the www.geektivism.com website, where the relevant page, www.geektivism.com/vivendi.php, is devoted to criticism of the Complainant.

In *Corinthians Licenciamentos Ltda. v. David Sallen, Sallen Enterprises and J.D.Sallen Enterprises* (WIPO Case No. D2000-0461), the posting of scripture on a website after notice of dispute by way of a "cease **[\*18]** and desist" letter was found not to demonstrate a legitimate interest under either paragraphs 4(c)(i) or 4(c)(iii) of the Policy.

Here the Panel is mindful that the Respondents have had some experience in defending administrative proceedings under the Policy and are very familiar with it. The Panel infers from the urgency with which the Respondents sought to create a website on which to post criticism of the Complainants, following receipt of the "cease and desist" letter, that their current, supposedly "free speech" use of the disputed domain name is contrived to prevent the Complainant from succeeding in these proceedings (which were foreshadowed in the "cease and desist" letter) and is therefore neither legitimate nor fair. Thus they cannot rely upon paragraph 4 (c)(iii) of the Policy. (See *Wal-Mart Stores, Inc. v. Walsucks & Walmarket Puerto Rico* (WIPO Case No. D2000-0477), holding the decision was not an anti-free speech precedent because the site was not a legitimate free speech site).

Bearing in mind that the Panel has found that non-English speaking Internet users would be likely to attach no significance to the appended word "sucks" and would therefore regard the disputed **[\*19]** domain name as conveying an association with the Complainant, the "free speech" argument of the Respondent is answered by the same reasoning as was adopted in *Monty & Pat Roberts, Inc., v. J. Bartell* (WIPO Case No. D2000-0300) concerning the domain name www.montyroberts.org:

*"The right to express one's views is not the same as the right to use another's name to identify one's self as the source of those views. One may be perfectly free to express his or her views about the quality or characteristics of the reporting of the New York Times or Time Magazine. That does not, however, translate into a right to identify one's self as the New York Times or Time Magazine".*

The Panel finds the Complainant has established this element. The Respondents have no rights or legitimate interest in the disputed domain name.

**Bad faith registration and use**

The circumstances of this case do not fit easily into any of the sub-paragraphs of paragraph 4 (b) of the Policy. That paragraph however, is expressly not limited to those specified circumstances. A finding of bad faith may be made where the Respondent "knew or should have known" of the registration and use of the trademark prior **[\*20]** to registering the domain name: *SportSoft Golf, Inc. v. Hale Irwin's Golfers' Passport* (NAF Case No. FA0094956). Likewise *Marriott International, Inc. v. John Marriot* (NAF Case No. FA0094737); *163972 Canada Inc. v. Sandro Ursino* (DeC Case No. AF-0211) and *Centeon L.L.C./Aventis Behring L.L.C. v. Ebiotech.com* (NAF Case No. FA0095037).

As already mentioned, the Respondents did have prior knowledge of the VIVENDI UNIVERSAL mark and they deliberately chose to register a domain name which incorporated that mark in its entirety. In so doing, they might have

thought that the word "sucks" would serve to distinguish the disputed domain name from the mark. However, in this regard they were mistaken, at least so far as non-English speakers are concerned, and they must bear the consequences of the risk they took.

In *Cruzeiro Licenciamentos Ltda. v. David Sallen, Sallen Enterprises and J.D.Sallen Enterprises* (WIPO Case No. D2000-0715), one factor held by the panel as tilting the inference against the Respondent and assisting the Complainant in discharging the onus of proof of bad faith was:

*"mere passive holding of a domain name can qualify as bad faith if the domain* [*21]  *name owner's conduct creates the impression that the name is for sale."*

The Panel finds that such an impression is created by Mr. Sallen's reply to the Complainant's counsel's request of August 6, 2001, for a response to the "cease and desist" letter of July 26, 2001:

*"in time. please remember -- one of us is not making any money off of this process and therefore must attend to the business of making a living."*

The speed with which the Respondents were able to direct Internet users reaching the disputed domain name to a site with "free speech" content following receipt of the "cease and desist" letter undermines their argument that five months is a perfectly reasonable time within which any legitimate domain name registrant might be expected to establish a website.

The Panel finds that the Respondents have acted in bad faith both in registration and use of the disputed domain name. The Complainant has established this element.

## 7. Decision

Pursuant to paragraphs 4(i) of the Policy and 15 of the Rules, the Panel directs that the domain name www.vivendiuniversalsucks.com be transferred to the Complainant.

> Alan L. Limbury
>
> Presiding Panelist
>
> Sir Ian Barker
>
> Panelist

DISSENTBY: [*22]  David E. Sorkin

DISSENT:

**Dissent**

I respectfully dissent from the decision of the majority of the Panel.

As the majority notes, the domain name at issue is clearly not identical to any of the Complainant's trademarks. The case therefore turns on the question whether a domain name that appends the pejorative term "sucks" to a trademark may be confusingly similar to that trademark. Numerous other UDRP panels have addressed this question with conflicting results, but many panels have held -- correctly, in my view -- that "sucks" domain names are not or cannot be confusingly similar. See *Lockheed Martin Corp. v. Parisi* (WIPO Case No. D2000-1015) (2-1 decision) (www.lockheedsucks.com and www.lockheedmartinsucks.com); *McLane Co. v. Craig* (WIPO Case No. D2000-1455) (www.mclanenortheastsucks.com); *Wal-Mart Stores, Inc. v. Wallmartcanadasucks.com* (WIPO Case No. D2000-1104) (www.wallmartcanadasucks.com); see also *Bloomberg L.P. v. Secaucus Group*, No. FA97077 (NAF June 7, 2001) (Sorkin, dissenting) (www.michaelbloombergsucks.com); cf. *America Online, Inc. v. Johuathan Investments, Inc.* (WIPO Case No. D2001-0918) (holding that www.fucknetscape.com is not confusingly similar [*23]  to NETSCAPE trademark); *E.I. du Pont de Nemours & Co. v. ITC*, No. FA96219 (NAF February 20, 2001) (3-0 decision) (finding www.lycralovers.com confusingly similar to complainant's LYCRA trademark, contrasting "lovers" with "sucks," "a particularly distinguishing word when added to a trademark ... that uniquely indicates that it is unaffiliated with the mark owner"); *Robo Enterprises, Inc. v. Daringer*, No. FA96375 (NAF January 15, 2001) (finding www.roboenterprises-litigation.com confusingly similar to complainant's ROBO ENTERPRISES mark, contrasting "litigation" with "sucks" and similar terms that clearly indicate that the domain name is not associated with or authorized by the trademark owner).

As the majority suggests, there may well be some narrow categories of trademarks for which the word "sucks" does not clearly disassociate a domain name from the trademark, and therefore it may be unwise to adopt a *per se* rule holding that "sucks" domain names can never be found confusingly similar to the trademarks they contain. But the Complainant in this proceeding does not claim to be known as a manufacturer of vacuum cleaners or suction pumps, or as a self-

2001 UDRP LEXIS 1265, *

deprecating alternative **[*24]** rock band, or a test laboratory for beverage straws, or a porn star, a black hole, or any other sort of entity that people are likely to associate with sucking. And even if the Complainant did fall within one of these categories, it would still bear the burden of proving a likelihood of confusion.

It is true that persons who are not fluent in English (and those who are unfamiliar with colloquial English) may not recognize the word "sucks" or the pejorative sense in which it is used here. The Complainant is a large multinational corporation, and its marks certainly must be known to some such persons. On the other hand, the word "sucks" is used quite frequently within domain names (and elsewhere) to criticize, disparage, and ridicule -- probably more frequently than any other single word in any language. The mere fact that some people may not fully comprehend the colloquial meaning of "sucks" is thus immaterial, at least absent evidence that many people understand the word to mean something that, when combined with the Complainant's trademark, is confusingly similar to the trademark.

I would find that the domain name www.vivendiuniversalsucks.com is neither identical nor confusingly **[*25]** similar to the trademark VIVENDI UNIVERSAL, and would dismiss the complaint on this basis without reaching the questions of legitimacy and bad faith.

David E. Sorkin

Panelist

2001 WL 1708670
Claim Number: FA0106000097750

THE NATIONAL ARBITRATION FORUM
PO BOX 50191
MINNEAPOLIS, MINNESOTA 55405 USA
DECISION


ACCESS RESOURCE SERVICES, INC. AND MISS CLEO


vs.


INDIVIDUAL (AKA DAVID MOLLE)


Claim Number: FA0106000097750


Domain Name :


PARTIES


Complainant isAccess Resource Services, Inc. and Miss Cleo , Fort Lauderdale , FL, USA ('Complainant') represented by Sean Moynihan, ofKlein, Zelman, Rothermel & Dichter, LLP . Respondent isDavid Molle Individual , Delphos, OH, USA ('Respondent').

REGISTRAR AND DISPUTED DOMAIN NAME

The domain name at issue is <misscleosucks.com > registered with Tucows, Inc.

PANEL


The undersigned certifies that he has acted independently and impartially and to the best of his knowledge, has no known conflict in serving as Panelist in this proceeding.


John J. Upchurch as Panelist.


PROCEDURAL HISTORY

Complainant submitted a Complaint to the National Arbitration Forum (the 'Forum') electronically on June 28, 2001; the Forum received a hard copy of the Complaint on July 2, 2001.


Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 1708670
Claim Number: FA0106000097750

Page 3

On July 3, 2001, Tucows, Inc. confirmed by e-mail to the Forum that the domain name <misscleosucks.com > is registered with Tucows, Inc. and that Respondent is the current registrant of the name. Tucows, Inc. has verified that Respondent is bound by the Tucows, Inc. registration agreement and has thereby agreed to resolve domain-name disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the 'Policy').

On July 12, 2001, a Notification of Complaint and Commencement of Administrative Proceeding (the 'Commencement Notification'), setting a deadline of August 1, 2001 by which Respondent could file a Response to the Complaint, was transmitted to Respondent via e-mail, post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts, and to postmaster@misscleosucks.com by e-mail.

Having received no Response from Respondent, using the same contact details and methods as were used for the Commencement Notification, the Forum transmitted to the parties a Notification of Respondent Default.

On August 2, 2001, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the Forum appointed John J. Upchurch as Panelist.

Having reviewed the communications records, the Administrative Panel (the 'Panel') finds that the Forum has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the 'Rules ') 'to employ reasonably available means calculated to achieve actual notice to Respondent.' Therefore, the Panel may issue its Decision based on the documents submitted and in accordance with the ICANN Policy, ICANN Rules, the Forum's Supplemental Rules and any rules and principles of law that the Panel deems applicable, without the benefit of any Response from Respondent.

RELIEF SOUGHT

Complainant requests that the domain name be transferred from Respondent to Complainant.

PARTIES' CONTENTIONS

A. Complainant

The <misscleosucks.com> domain name is confusingly similar to Complainant's MS. CLEO federally registered service mark.

Respondent has no rights or legitimate interests in the <misscleosucks.com> domain name.

Respondent registered and used the <misscleosucks.com> domain name in bad faith.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 1708670
Claim Number: FA0106000097750

B. Respondent

No Response was received.

## FINDINGS

Complainant is the owner of the MS. CLEO service mark, relating to Complainant's psychic services. Complainant applied for registration of its MS. CLEO mark on the Principal Register of the United States Patent and Trademark Office on October 11, 2000. Complainant has spent tens of millions of dollars promoting its MS. CLEO mark.

Respondent registered the <misscleosucks.com> domain name on April 22, 2001. Respondent created a website located at the disputed domain name which promotes, and contains advertisements for, a competing psychic service.

## DISCUSSION

Paragraph 15(a) of the Rules instructs this Panel to 'decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable.'

In view of Respondent's failure to submit a response, the Panel shall decide this administrative proceeding on the basis of the Complainant's undisputed representations pursuant to paragraphs 5(e), 14(a) and 15(a) of the Rules.

Paragraph 4(a) of the Policy requires that the Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1) the domain name registered by the Respondent is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;

(2) the Respondent has no rights or legitimate interests in respect of the domain name; and

(3) the domain name has been registered and is being used in bad faith.

Identical and/or Confusingly Similar

Complainant has established rights in the MS. CLEO service mark through its

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 1708670
Claim Number: FA0106000097750

extensive use in commerce. It is well established that a mark does not require registration in order for a Complainant to establish rights in a mark. See Great Plains Metromall, LLC v. Creach, FA 97044 (Nat. Arb. Forum May 18, 2001) (finding that the Uniform Domain Name Dispute Resolution Policy does not require 'that a trademark be registered by a governmental authority for such rights to exist'); see also Keppel TatLee Bank v. Taylor, D2001-0168 (WIPO Mar. 28, 2001) ('On account of long and substantial use of the said name < keppelbank.com> in connection with its banking business, it has acquired rights under the common law).

The <misscleosucks.com> domain name is confusingly similar to Complainant's MS. CLEO mark. The addition of the word 'sucks,' combined with the audibly indistinguishable 'miss' (to replace Complainant's 'MS') to the disputed domain does not escape the realm of confusing similarity. SeeADT Services AG v. ADT Sucks.com, D2001-0213 (WIPO Apr. 23, 2001) (exploring the difference of opinion among panels on 'sucks' domain name disputes and concluding that use of the 'sucks' suffix does not defeat Complainant's confusing similarity argument).

The Panel therefore finds that Policy   4(a)(i) has been satisfied.

RIGHTS OR LEGITIMATE INTERESTS

Respondent has failed to submit a Response in regard to this matter. It is well established, that when a Respondent fails to Respond a Panel may take all the inferences of the Complaint as true. SeeTalk City, Inc. v. Robertson, D2000-0009, (WIPO Feb. 29, 2000) ('In the absence of a response, it is appropriate to accept as true all allegations of the Complaint').

Furthermore, Respondent's failure to respond permits the Panel to find that Respondent has no rights or legitimate interests in respect to the < misscleosucks.com > domain name. SeeParfums Christian Dior v. QTR Corp., D2000-0023 (WIPO Mar. 9, 2000) (finding that by not submitting a response, the Respondent has failed to invoke any circumstance which could demonstrate any rights or legitimate interests in the domain name); see also Geocities v. Geociites.com, D2000-0326 (WIPO June 19, 2000) (finding that Respondent has no rights or legitimate interest in the domain name because the Respondent never submitted a response nor provided the panel with evidence to suggest otherwise).

Respondent's use of the disputed domain name, to advertise and promote competing psychic services, is not a bona fide offering of goods or services pursuant to Policy   4(c)(i). SeeThe Chip Merchant, Inc. v. Blue Star Elec., D2000-0474 (WIPO Aug. 21, 2000) (finding that Respondent's use of the disputed domain names is confusingly similar to Complainant's mark. Respondent's use of the domain names to sell competing goods was an illegitimate use and not a bona fide offering of goods).

There is no evidence, and Respondent has failed to come forward to establish that it is commonly known by the disputed domain name, pursuant to Policy 4(c)(ii). See Gallup Inc. v. Amish Country Store, FA 96209 (Nat. Arb. Forum Jan. 23, 2001) (finding that Respondent does not have rights in domain name when Respondent is not known by the mark).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 1708670
Claim Number: FA0106000097750

Page 6

Lastly, it is not a fair use to register a domain name which is confusingly similar to a Complainant's mark, to advertise services in competition to those offered by Complainant. Furthermore, even though Respondent has registered a domain name containing the word 'sucks,' Respondent has failed to use the disputed domain name in

any legitimate or fair use manner. SeeKosmea Pty Ltd. v. Krpan, D2000-0948 (WIPO Oct. 3, 2000) (finding no rights in the domain name where Respondent has an intention to divert consumers of Complainant's products to Respondent's site by using Complainant's mark); see also AltaVista v. Krotov, D2000-1091 (WIPO Oct. 25, 2000) (finding that use of the domain name to direct users to other, unconnected websites does not constitute a legitimate interest in the domain name).

The Panel therefore finds that Policy  4(a)(ii) has been satisfied.

REGISTRATION AND USE IN BAD FAITH

Respondent's registration and use of the <misscleosucks.com > domain name to promote competing psychic services, assumedly for commercial gain, by creating a likelihood of confusion with Complainant's mark is evidence of bad faith pursuant to Policy  4(b)(iv). SeeTM Acquisition Corp. v. Carroll, FA 97035 (Nat. Arb. Forum May 14, 2001) (finding bad faith where Respondent used domain name, for commercial gain, to intentionally attract users to a direct competitor of Complainant).

The Panel therefore finds that Policy  4(a)(iii) has been satisfied.

DECISION

Having established all three elements required under the ICANN Policy, the Panel concludes that the requested relief shall be hereby granted.

Accordingly, it is Ordered that the domain name <misscleosucks.com> be transferred from Respondent to Complainant.

Dated: August 13, 2001

John J. Upchurch, Panelist

Copyright © 2001 National Arbitration Forum

                    Copyright (c) 2003 West Group

2001 WL 1708670 (UDRP-ARB Dec.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 1708670
Claim Number: FA0106000097750

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

5 of 9 DOCUMENTS

WIPO Arbitration and Mediation Center

NOTICE: Administrative Panel Decisions originally provided by the Secretariat of
WIPO. The Secretariat of WIPO assumes no liability or responsibility with regard to the
transformation of this data.

The Salvation Army v. Info-Bahn, Inc.

Case No. D2001-0463

WIPO Arbitration and Mediation Center ADMINISTRATIVE PANEL DECISION

*2001 UDRP LEXIS 820*

May 10, 2001

OPINIONBY: R. Eric Gaum, Sole Panelist

OPINION:
[*1] **1. The Parties**
1.1 The Complainant is The Salvation Army, a New York corporation with its principal office at 440 West Nyack Road, West Nyack, New York 10994-1739, USA.
1.2 The Respondent is Info-Bahn, Inc., a corporation having a place of business at 4304 River Close Boulevard, Valrico, Florida 33594, USA.
**2. The Domain Name and Registrar**
2.1 The disputed domain name is www.salvationarmysucks.com.
2.2 The registrar of the disputed domain name is www.BulkRegister.com with a business address at 7 East Redwood Street, Third Floor, Baltimore, Maryland 21202, USA.
**3. Procedural History**
3.1 Complainant initiated the proceeding by filing a complaint, received by the WIPO Arbitration and Mediation Center ("WIPO") on March 30, 2001.
3.2 On April 5, 2001, all formal requirements for the establishment of the complaint were checked by WIPO and found to be in compliance with the ICANN Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Domain Name Dispute Resolution Policy (the "Supplemental Rules"). The Panel accepts the WIPO checklist as evidence of proper [*2] compliance with the Policy, Rules, and Supplemental Rules.
3.3 On April 6, 2001, WIPO transmitted notification of the complaint and commencement of the proceedings to Respondent by email.
3.4 On April 6, 2001, WIPO received an email from the Respondent indicating that it was not renewing the domain name at issue and that the Complainant could register the domain name in May of 2001 once the registration expires.
3.5 On April 9, 2001, WIPO notified the Respondent via email that WIPO acted as a dispute resolution provider and that the Respondent should contact the Complainant's counsel.
3.6 On April 14, 2001, WIPO received an email from the Respondent disputing the allegations in the complaint. On April 19, 2001, WIPO informed the Respondent via email that it had received the Respondent's email but that it was not a proper response under the Rules. WIPO also informed the Respondent that regardless of whether it corrected the defects in its response, WIPO would proceed to appoint the Administrative Panel in accordance with the Rules.
3.7 On April 25, 2001, WIPO invited the undersigned to serve as panelist in this administrative proceeding, subject to receipt of an executed Statement [*3] of Acceptance and Declaration of Impartiality and Independence ("Statement and

Declaration"). On April 26, 2001, the undersigned transmitted by facsimile the executed Statement and Declaration to WIPO.

3.8 On April 27, 2001, Complainant and Respondent were notified by WIPO of the appointment of the undersigned sole panelist as the Administrative Panel (the "Panel") in this matter. WIPO notified the Panel that, absent exceptional circumstances it would be required to forward its decision to WIPO by May 10, 2001.

The Panel has not received any further requests from Complainant or Respondent regarding further submissions, waivers or extensions of deadlines, and the Panel has not found it necessary to request any further information from the parties. The proceedings have been conducted in English.

**4. Factual Background**

4.1 Complainant The Salvation Army owns the rights to the registered service mark THE SALVATION ARMY printed across a shield for "religious and charitable services - namely, the conduct of religious meetings, the operation of hospitals, clinics, maternity homes, settlements and day nurseries, children's homes, rehabilitation centers for alcoholics, clubs for service [*4] men, missing persons bureaus, camps for children and adults, and care for disaster victims, unmarried mothers, prisoners and parolees and their families, the aged, and the homeless and the destitute," which was registered April 12, 1966, with a claimed first use as early as January 1, 1918.

4.2 The Respondent registered the domain name www.salvationarmysucks.com with www.BulkRegister.com on June 1, 2001. The domain name is not active.

**5. Parties' Contentions**

**A. Complaint**

Complainant states:

"Founded in London in 1865, The Salvation Army is a religious and charitable organization that conducts programs in over 100 countries. It maintains or supports over 15,000 centers for worship as well as a wide range of charitable, social, medical, educational and other community services. Information about The Salvation Army is disseminated through magazines, books, brochures, newspapers and the Internet to millions of people in the United States and abroad. The Salvation Army receives a majority of its funding from charitable contributions. It relies on the good will associated with its name to receive such charitable contributions. As a result of the efforts, charitable works and [*5] activities of The Salvation Army, its name, "The Salvation Army" has achieved world-wide recognition in the minds of the public as a symbol of the good works and religious mission of The Salvation Army."

"The Respondent is a commercial business not affiliated with The Salvation Army that (a) has registered the www.salvationarmysucks.com domain name, (b) has not used the www.salvationarmysucks.com domain name to identify a web site, and (c) has offered to sell the www.salvationarmysucks.com domain name to The Salvation Army for a profit."

"The Salvation Army owns the rights to the registered service mark which includes "THE SALVATION ARMY" mark printed across a shield. The service mark was registered on the principal register of the United States Patent and Trademark Office on April 12, 1966 and bears U.S. Registration No. 807,044. On April 12, 1986, the registered mark was renewed for an additional term of twenty years. A copy of the registration is attached hereto as Annex 4."

"The Salvation Army also has common law service mark rights in its name based on its continuous use of the name "The Salvation Army" for more than a century. In the United States, the name "The Salvation [*6] Army" has been used continuously since 1879 and appears on all of The Salvation Army's brochures, advertisements, on its Internet web sites, on its collection sites for tangible personal property, in its thrift stores, and in connection with its fundraising solicitations, including its nationally-known Christmas kettle solicitation campaign."

"The Salvation Army has web sites located at, among other Internet addresses, www.salvationarmy.org, www.salvationarmyusa.org, www.salvationarmy-usaeast.org, www.salvationarmyusawest.org, www.salvationarmysouth.org, and www.usc.salvationarmy.org."

"In response to the letter sent on behalf of The Salvation Army which is attached hereto as Annex 5, Respondent sent the letter attached hereto as Annex 6, in which Respondent offers to sell the www.salvationarmysucks.com domain name to The Salvation Army for an amount significantly in excess of the cost to the Respondent of registering the www.salvationarmysucks.com domain name. In the annexed letter, Respondent offers to sell the www.salvationarmysucks.com domain name to The Salvation Army for $ 750. Although The Salvation Army is uncertain as to the amount the Respondent paid to register the www.salvationarmysucks.com [*7] domain name, as of March 15, 2001, the Bulk Register web site listed a one-time $ 79 membership fee, in addition to $ 10 or $ 12 per domain name per year. A copy of a print-out from the Bulk Register web site including the pricing information is attached hereto as Annex 7. This offer by Respondent to sell the www.salvationarmysucks.com domain name to The Salvation Army for valuable consideration in excess of Respondent's out-of-pocket costs directly related to the

www.salvationarmysucks.com domain name fits squarely within the definition of bad faith in Paragraph 4(b)(i) of the Policy."

"Respondent's bad-faith intent to extract money from The Salvation Army is underscored by the following quotes from Annex 6: (a) "we are not in the mode of purchasing domain names . . . and losing money on our investments", (b) "we will agree not to publish a derogatory article singularly about your client with regard to this topic, if this matter is handled as we have outlined in this letter", and (c) "We will gladly allow the sale/transfer of this domain name to your client for our domain name sale fee of $ 750.00 (which includes three hours of my time to handle this issue). Should you cause our [*8] firm to invest more time due to prolonged negotiations our price will escalate accordingly by $ 250.00 per hour of time consumed by this matter"."

"Respondent's offer to sell the www.salvationarmysucks.com domain name to The Salvation Army for an amount significantly in excess of respondent's cost related to the registration of the www.salvationarmysucks.com domain name distinguishes this case from Panel Decisions D2000-1104, D2000-1015, and D2000-1455, in which there was no evidence that the Respondents had solicited money for the transfer of the domain names in question. Here, as in Panel Decision D2000-0477, Respondent did not register the domain name in order to express opinions or to seek the expression of the opinion of others. Respondent's intention was to extract money from The Salvation Army.

"Finally, Respondent states in Annex 6 that it has "successfully purchased most of the major non-profit names with the domain name and are in the process of negotiating transfers of these to their organizations." Although Complainant has been unable to verify this statement by Respondent, the United States Court of Appeals for the First Circuit has upheld a district court's determination [*9] that a registrant's ownership of numerous domain names containing the famous trademarks of others in the hope that the famous trademark holders will be willing to pay to reclaim their intellectual property rights suggests bad faith under the Anticybersquatting Consumer Protection Act."

"The Salvation Army has not licensed or otherwise authorized respondent to use the name of The Salvation Army. Respondent is not using or preparing to use the www.salvationarmysucks.com domain name or a name corresponding to the www.salvationarmysucks.com domain name in connection with a bona fide offering of goods or services. In the letter attached hereto as Annex 6, Respondent states that Info-Bahn has "no intention of creating or operating a web site with this domain". Respondent has not commonly been known by the www.salvationarmysucks.com domain name. Respondent has not at any point claimed that it is commonly known by the www.salvationarmysucks.com domain name. Respondent is not making a legitimate noncommercial or fair use of the www.salvationarmysucks.com domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the service mark at issue."

"Whereas Respondent [*10] claims in Annex 6 that the registered www.salvationarmysucks.com domain name "is for an expressive purpose and falls under the constitutional protection of the right to freedom of speech," Respondent also states that his company has "no intention of creating or operating a web site with this domain name." Because it is not associated with a web site, the www.salvationarmysucks.com domain name can not have any freedom of expression protection as criticism or parody. This factor distinguished this case from Panel Decision D2000-1104 which relies primarily on respondent's assertion that it is running a freedom of expression site."

"Respondent's claim that its registration of the www.salvationarmysucks.com domain name was for an expressive purpose is further undermined by its own assertions in Annex 6 (a) that its registration of the www.salvationarmysucks.com domain name was part of an "experiment to determine how proactive nonprofits such as the Salvation Army are protecting their image in cyberspace," (b) that the company is "in the business of licensing the use of our domain names to an interested leasee [sic]" and (c) that the company has "successfully purchased most of the major [*11] non-profit names with this domain name and . . . [is] in the process of negotiating transfers of these to their organizations."

"As stated above, the www.salvationarmysucks.com domain name is identical to The Salvation Army's service mark except that (a) the www.salvationarmysucks.com domain name includes the generic top level domain name ".com" and (b) the www.salvationarmysucks.com domain name adds the word "sucks" to the mark. . Although the appropriate top level domain name for a not-for-profit corporation such as The Salvation Army is ".org", an individual searching for a Salvation Army domain name or web site would be unlikely to distinguish among the domain names based solely on the top level domain name."

"The Salvation Army submits that while the slang term might lead some people to believe that the www.salvationarmysucks.com domain name was not associated with the owner of the service mark, "equally others may be unable to give it any very definite meaning and will be confused about the potential association with" The Salvation Army."

B. Respondent states:

"Info-Bahn Inc. is not renewing the domain name in this complaint. Therefore, if your client wants to claim [*12] this domain then they will be able to in May of 2001 once this domain has been forfeited by Info-Bahn, Inc. This domain

was done as part of a research project and there is no commercial or economic desire by Info-Bahn, Inc. to continue with the control of this domain."

"Info-Bahn, Inc. does not agree with the complainant's description or representation of our intentions. The complainant has misstated our purposes and makes assumptions as to our long-term use of intellectual properties. Our stated intention to not proceed with the use of the domain is not an admittance of guilt or acknowledgement of any wrongdoing. As a matter of factual record Info-Bahn, Inc. did not contact the Salvation Army regarding the use or sale of the domain. The Salvation Army threatened Info-Bahn, Inc. through the use of intimidation and ambiguous claims to the domain in question."

"Furthermore, the matter of costs associated with this domain involve more than the out of pocket expense fees paid to www.bulkregister.com. As is stated in our letter Info-Bahn, Inc. had costs associated with research & development and continues to have costs at $ 250.00 per hour for mitigation of this domain."

"As stated, [*13] previously Info-Bahn, Inc. will agree to transfer the domain to the Salvation Army as an act of goodwill and to show that there is no malicious intent on the part of Info-Bahn, Inc. and/or it's officers toward the Salvation Army. Otherwise, we intend to allow the domain to forfeit when it renews in May 2001."

"In addition, Info-Bahn, Inc. did contact Mr. Dolan on 4-10-01 and Mr. Dolan was told that Info-Bahn, Inc. would agree to transfer the domain to Salvation Army. Mr. Dolan said, that Info-Bahn, Inc. would need to proceed with this matter under your direction. We respectfully request that the WIPO suggest how we can mitigate this domain to the satisfaction of the complainant if he does not provide communication that enables a successful non-combatant procedure to comply with their stated objective in the WIPO complaint. Info-Bahn, Inc. shall preserve the right to legal remedy if this matter continues to escalate and cause additional expense to Info-Bahn, Inc."

## 6. Discussion and Findings

6.1 The Uniform Domain Name Dispute Resolution Policy (the "Policy"), adopted by the Internet Corporation for Assigned Names and Numbers (ICANN) on August 26, 1999, (with implementing documents [*14] approved on October 24, 1999), is addressed to resolving disputes concerning allegations of abusive domain name registration. The Panel will confine itself to making determinations necessary to resolve this administrative proceeding.

6.2 Before reaching the merits, the Panel must decide whether to consider the Respondent's emails dated April 6, 2001, and April 14, 2001, as its response. Under the Rules, this determination is solely within the discretion of the Panel. Rules 10(a), 10(b) and 10(d). As the Complainant has not objected to the Respondent's email submissions and because they were received before the Panel began any substantive review of this matter, it is appropriate to consider the emails.

6.3 Paragraph 4(a) of the Policy sets forth three elements that must be established by a Complainant to merit a finding that a Respondent has engaged in abusive domain name registration, and to obtain relief. These elements are that:

(i) Respondent's domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and

(ii) Respondent has no rights or legitimate interests in respect of the domain name; and

(iii) Respondent's domain [*15] name has been registered and is being used in bad faith.

In the administrative proceeding, the complainant must prove that each of these three elements are present.

6.4 Based upon the registered service mark for THE SALVATION ARMY and the continuous use of the mark, the Complainant clearly has rights in the mark.

6.5 Complainant asserts that the domain name www.salvationarmysucks.com is, in part, identical to and, on the whole, confusingly similar to the service mark THE SALVATION ARMY.

6.6 As in initial matter, the Panel notes that the Respondent has not challenged the Complainant's allegation that the domain name is identical and/or confusingly similar to the registered service mark.

6.7 The Panel finds that the domain name is not identical to the Complainant's registered service mark. A common dictionary defines the term "identical" to mean "being the same" or "exactly equal or alike." Obviously the addition of the word "sucks" prevents the domain name and service mark from being identical. The Policy does not say "identical in part" and the Panel believes expanding the definition of "identical" would not be productive.

6.8 However, the Panel does find that the domain name [*16] is confusingly similar to the Complainant's registered service mark. A domain name is confusingly similar to a trademark for purposes of the Policy when the domain name includes the trademark regardless of the other terms in the domain name. *See Wal-Mart Stores, Inc. v. Richard MacLeod d/b/a For Sale*, WIPO Case No. D2000-0662.

6.9 The Panel finds the www.salvationarmysucks.com domain name is confusingly similar to the registered service mark THE SALVATION ARMY, and that the Complainant has established it has rights in the mark THE SALVATION ARMY, pursuant to paragraph 4(a)(i) of the Policy.

6.10 Paragraph 4(c) of the Policy lists several circumstances, without limitation, that if found by the Panel shall demonstrate the Respondent's rights or legitimate interests to the domain name for purposes of paragraph 4(a)(ii). In particular, paragraph 4(c) states:

(i) before any notice to you [Respondent] of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a bona fide offering of goods or services; or

(ii) you (as an individual, business, or other organization) have been commonly known by the [*17] domain name, even if you have acquired no trademark or service mark rights; or

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

6.11 There is no evidence in the record that would indicate that Respondent has any rights or legitimate interests in respect of the domain name www.salvationarmysucks.com.

6.12 In its July 8, 2000, letter to the Complainant's counsel, the Respondent stated:

"We reserve as society the right to freedom of speech. Such as the ability to state our opinion of the Salvation Army or any other company or non-profit agency. Our registered domain name is for an expressive purpose and falls under the constitutional protection of the right to freedom of speech. We are not in the mode of purchasing domain names (similar to real estate investments in the physical world) and losing money on our investments. We have no intention of creating or operating a web site with this domain name under our business plan." (emphasis added)

As this paragraph indicates, the domain name www.salvationarmysucks.com was purchased [*18] by the Respondent as an investment. Although the Respondent attempts to invoke an arguably legitimate noncommercial or fair use of the domain name, i.e., criticism of The Salvation Army, in the same breath it admits that it has no intention of doing so.

6.13 The Panel finds that the Respondent has no rights or legitimate interests in respect of the domain name www.salvationarmysucks.com, pursuant to paragraph 4(a)(ii) of the Policy.

6.14 Paragraph 4(b) of the Policy lists several factors, without limitation, that if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith. In particular, paragraph 4(b)(i) states:

(i) circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your documented out-of-pocket costs directly related to the domain name.

6.15 In the same letter of July 8, 2000, the Respondent stated:

"We are in the business of licensing [*19] the use of our domain names to an interested leasee."

"Our company's experiment was established to determine how proactive non-profits such as the Salvation Army are protecting their image in cyberspace."

"We will keep this issue discreet and confidential as long as your firm and client adhere to our settlement guidelines. We reserve the right to publish the results of our experiment as part of the over-all initial objective of this project. Otherwise, it would be necessary to increase the value sought for this sale significantly."

"I will further note that we will agree not to publish a derogatory article singularly about your client with regard to this topic, if this matter is handled as we have outlined in this letter."

"We have successfully purchased most of the major non-profit names with this domain name and are in the process of negotiating transfers of these to their organizations. In addition, we purchased most of the major advertisers in some of the most notable business magazines in North America. This was meant as a [sic] both a lesson in pro-active public affairs & relations and an experiment based on the evolution of business in the Internet society."

"We will gladly [*20] allow the sale/transfer of this domain name to your client for our domain name sale fee of $ 750.00 (which includes three hours of my time to handle this issue). Should you cause our firm to invest more time due to prolonged negotiations our price will escalate accordingly by $ 250.00 per hour of time consumed by this matter."

"In the future, I would advice [sic] your client to instruct their public relations department to take the appropriate steps to protect their brand, products, slogans and themes in cyberspace more proactively."

"I do assure you that any attempt to litigate this will cause our company to transfer this to another party more interested in the debate than our company."

"I hope you will accept our offer of sale of this domain, as you know litigation would exceed this cost by 50 fold."

6.16 It is abundantly clear from the foregoing that the Respondent registered the www.salvationarmysucks.com domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the Complainant.

6.17 In the same letter the Respondent admitted that its "registrar charges approximately $ 35.00 for the transfer" of a domain name. The [*21] Respondent has not proffered any evidence of its documented out-of-pocket costs directly

2001 UDRP LEXIS 820, *

related to the domain name. The Panel finds that the Respondent's offer to sell the domain name for $ 750.00 is clearly in excess of any reasonable out-of-pocket costs associated with the domain name.

6.18    The Respondent's conduct clearly evidences its registration and use in bad faith of the www.salvationarmysucks.com domain name. Therefore, the Panel finds the Complainant has established that the Respondent registered and used the domain name www.salvationarmysucks.com in bad faith, pursuant to paragraph 4(b)(iv) of the Policy.

**7. Decision**

As the Complainant, The Salvation Army, has established that the Respondent, Info-Bahn, Inc., has engaged in abusive registration of the domain name www.salvationarmysucks.com within the meaning of paragraph 4(a) of the Policy, the Panel orders that the domain name www.salvationarmysucks.com be transferred to the Complainant.

R. Eric Gaum

Sole Panelist

6 of 9 DOCUMENTS

WIPO Arbitration and Mediation Center

NOTICE: Administrative Panel Decisions originally provided by the Secretariat of
WIPO. The Secretariat of WIPO assumes no liability or responsibility with regard to the
transformation of this data.

ADT Services AG v. ADT Sucks.com

Case No. D2001-0213

WIPO Arbitration and Mediation Center ADMINISTRATIVE PANEL DECISION

*2001 UDRP LEXIS 522*

April 23, 2001

OPINIONBY: Ian Barker QC, Presiding Panelist; David E Wagoner, Panelist; Dennis A. Foster, Panelist

OPINION:
 [*1] **1. The Parties**
The Complainant is ADT Services AG, a Swiss corporation with its principal place of business at Shaffhausen,
Switzerland. The Complainant is represented by Mr John P. Margiotta, of Fross Zelnick Lehrman & Zissu P.C.,
Attorneys of New York, USA.
The Respondent is ADT Sucks.com of Box 4357, Boynton Beach, Florida, USA. The Respondent is represented by Mr
Howard M. Neu, Attorney of Pembroke Pines, Florida, USA.
**2. The Domain Name and Registrar**
The domain name at issue is www.adtsucks.com. The domain name is registered with Network Solutions Inc., 505
Huntmar Park Drive, Herndon, Virginia 20170, U.S.A. ("NSI").
**3. Procedural History**
The Complaint submitted by ADT Services AG, was received on February 9, 2001, (electronic version) and February
12, 2001, (hard copy) by the World Intellectual Property Organization and Mediation Center ("WIPO Center").
On February 15, 2001, a request for Registrar verification was transmitted by the WIPO Center to NSI.
By email dated February 16, 2001, NSI advised WIPO Center as follows:
NSI had received a copy of the Complaint from the Complainant.
NSI is the Registrar of the domain name registration www.adtsucks.com.
 [*2] WWW.ADTsucks.com at the address shown for the Respondent is shown as the "current registrant" of the domain
name.
R Schwartz of Nevis, Kentucky, USA is the billing, administrative and technical contact.
The domain name registration is currently in "Active" status.
The NSI has currently incorporated in its agreements the policy for Uniform Domain Name Dispute Resolution adopted
by the Internet Corporation for Assigned Names and Numbers ("ICANN").
The advice from NSI that the domain name in question is still "active" indicates the Respondent has not requested that
the domain name at issue be deleted from the domain name database. The Respondent has not sought to terminate the
agreement with NSI. Accordingly, the Respondent is bound by the provisions of NSI's Domain Name Dispute
Resolution Policy, i.e., the ICANN policy. The Respondent has not challenged the jurisdiction of the Panel.
Having verified that the Complaint satisfied the formal requirements of the Uniform Policy and the Uniform Rules, the
WIPO Center on February 26, 2001, transmitted by post-courier and by email a notification of Amended Complaint and
Commencement of Administrative Proceedings to the Respondent. A copy [*3] of the Amended Complaint was also

emailed to NSI and ICANN. The Respondent filed a Response on March 15, 2001 (electronic) and March 20, 2001 (hard copy).

The Respondent elected to have the Complaint resolved by a three member panel. The parties have duly paid the amounts required of them to the WIPO Center.

The WIPO Center invited the Honorable Sir Ian Barker QC to serve as Presiding Panelist in the case. It had previously invited Mr David E Wagoner and Mr Dennis A Foster to be Panelists. All panelists have duly given a statement of acceptance and a declaration of impartiality and independence.

The Panel finds that the Administrative Panel was properly constituted in accordance with the Rules and the Supplemental Rules.

On April 5, 2001, WIPO Center forwarded to the Panelists by courier the relevant submissions and the record. In terms of Rule 5(b), in the absence of exceptional circumstances, the Panel would have been required to forward its decision by April 19, 2001. In view of communication difficulties and the intervention of Easter holidays, a decision will now be given on or before April 27, 2001.

The Complainant sought leave to file a Reply to the Response. The Respondent [*4] opposed. The Panel has not seen the need for further documents: there is no right to file a reply given to a Respondent under the Rules. The Panel does not permit the filing of a Reply.

The Panel has independently determined and agrees with the assessment of WIPO Center that the Complaint meets the formal requirements of the Rules for Uniform Domain Name Dispute Resolution Policy as approved by ICANN on October 24, 1999, ("the Rules") and the Supplemental Rules.

The language of the administrative proceeding is English, being the language of the registration agreement.

## 4. Factual Background

Complainant is the largest provider of residential and commercial security monitoring services in the United States. It provides security monitoring services of all kinds to protect personal and real property customers under the service marks and trade names ADT and/or ADT SECURITY SYSTEMS, since at least as early as 1908. Complainant currently provides such services, commonly known as "central station monitoring" services, to over 1,000,000 homes in the United States.

Complainant provides central station monitoring and other security services to commercial customers from small businesses [*5] to the world's largest corporations. *SDM* magazine, a trade magazine for the electronic security industry, ranked the Complainant number one, based on revenue, in its 1999 and 2000 "Top Systems Integrators Report," which ranked the top 100 companies "that derive more than half of their revenue from the sales, installation, and service of access control, CCTV, and integrated security systems."

Complainant owns the following federally registered US trademarks:

| ARK | NO./DATE | GOODS/SERVICES |
|---|---|---|
| ADT | 710,708<br>registered: 01/31/1961<br>first use: 1903 | Central station electric protection service, including fire alarm service, watchmen's supervisory service, sprinkler and waterflow supervisory service, intruder and burglar alarm service, and industrial process supervisory service. (Class 35) |
| ADT | 710,507<br>registered: 01/31/1961<br>first use: 10/16/1913 | Electric protection equipment, including fire alarm boxes, fire detecting and alarm devices, watchmen's tour stations, sprinkler supervisory and waterflow alarm devices, intruder alarm apparatus, and vault alarm devices. (Class 9) |
| ADT<br>(stylised) | 803,247<br>registered: 02/01/1966<br>first use: 01/1937 | Installation, inspection, maintenance and trouble call service for electrical protection equipment and services-namely, fire alarm equipment and services, watchmen's supervisory equipment and services, sprinkler and waterflow supervisory equipment and services, |

2001 UDRP LEXIS 522, *

|  |  |  |
|---|---|---|
|  |  | intruder and burglar alarm equipment and services, and industrial process supervisory equipment services. (Class 37) |
| ADT (stylized) | 838,956 registered: 11/14/1967 first use: 02/15/1965 | Central station electric protection service, including fire alarm service, watchmen's supervisory service, sprinkler and waterflow supervisory service, intruder and burglar alarm service, industrial process supervisory service. (Class 35) Installation, inspection, maintenance and trouble call service for electrical protection equipment and services-namely, fire alarm equipment and services, watchmen's supervisory equipment and services, sprinkler and waterflow supervisory equipment and services, intruder and burglar alarm equipment and services, and industrial process supervisory equipment and services. (Class 37) |
| ADT (stylized) | 846,966 registered: 04/02/1968 first use: 08/02/1966 | Electric protection equipment - namely, fire alarm boxes, fire detecting and alarm devices, watchmen's tour stations, sprinkler supervisory and waterflow alarm devices, intruder alarm apparatus, and vault alarm devices. (Class 9) |
| ADT (stylised) | 1,034,716 registered: 03/02.1976: first use: 12/04/1973 | Closed circuit television equipment - namely, closed circuit television services, television cameras, television monitors and monitor units, television camera lenses, television camera zoom lenses and remote control units, television camera mountings and housings and video switches for providing a single output from a plurality of inputs. (Class 9) |

[*6]  Complainant has developed substantial goodwill in the ADT marks and trade name. It currently spends tens of millions of dollars annually in national advertisement and promotion of its goods and services under its ADT-related marks in television, radio, newspapers, magazines and direct mail advertisements. ADT Security services also maintains an Internet web site, www.adt.com, which provides consumer information concerning its goods and services.

The Respondent diverts users of www.adtsucks.com to its own web site, www.erealestate.com which offers links to several other sites, including pornographic sites. The other sites that users can link to through www.erealestate.com are all commercial in nature.

The www.errealestate.com site is controlled by Rick Schwartz, the administrative, technical and billing contact for the Domain Name. Mr. Schwartz claims on the home page of www.erealestate.com to own over 3,000 domain names, many of which incorporate famous trademarks and trade names.

Mr Schwartz has received publicity as a result of the large number of domain names that he has acquired and sold. According to an article in *The Business Journal*, more than half of the domain names [*7] owned by Mr. Schwartz are "dirty". They include such generic names as www.dick.com, www.orgy.com, www.porno.com, www.ass.com and www.horny.com. Mr. Schwartz has also a group of domain names incorporating famous trademarks with the word

"SUCKS" appended to them. These include, for example, www.cbs-sucks.com, www.bellatlantic-sucks.com, www.gm-sucks.com, www.mci-sucks.com, www.motel6sucks.com and www.nbcsportsucks.com.

One of the featured jump sites from Mr. Schwartz's www.erealestate.com site is to an adults-only entertainment site called www.men.com. If the user clicks on www.men.com, he or she is taken to a page that offers two jump sites to pornographic material; one advertised for "straight" men and one for "gay" men. Clicking through to these sites, the viewer sees very explicit pornographic pictures.

In addition to the jump sites to pornographic material, www.erealestate.com features jump sites to other commercial entities, including www.bulkemail.com (which sells bulk e-mail programs for the desktop computer), <discount www.reservations.com> (which sells discount travel arrangements), www.ebid.com (an auction site), www.netfinders.com (a search engine), www.e-movie.com (which [*8] enables users to rent, buy and view VHS and DVD recordings) <and www.tradeshows.com> (a site that enables users to locate their favourite tradeshows).

**5. Parties' Contentions:**

**Complainant** (in summary)

(a) The disputed domain name is confusingly similar to its registered marks. It invokes various WIPO decisions which have held that the addition of a pejorative term such as 'sucks' to a famous mark is evidence of confusing similarity to that mark.

(b) Respondent has no legitimate rights or interest in the name.

(c) Respondent has no defence based on free expression rights.

(d) Respondent is using the name to divert traffic to its own commercial sites featuring pornography.

(e) The Respondent registered and is using the name in bad faith. Mr Schwartz proclaims on his www.enrealestate.com home page that he registers 3,000 names, many of which incorporate famous marks.

(f) Mr Schwartz (who controls Respondent) deals in domain names including names which are famous marks plus the word 'sucks'. E.g. CBS-SUCKS on www.bellatlantic-sucks.com.

(g) Complainant's marks are tarnished by the deflection of Internet users entering the disputed domain name site on to pornographic sites.

[*9] (h) Respondent is seeking to capitalise on Complainant's goodwill.

**Respondent**

(a) It relies on those WIPO decisions which have, contrary to others, held that the word 'sucks' when added in a domain name to a famous mark does not make the name confusingly similar to the mark.

(b) There is no traffic to divert from Complainant's site, since any user would know www.adtsucks.com is not a domain of the Complainant.

(c) The disputed domain is being used as a free speech website.

(d) Respondent's other domains such as www.orgy.com or www.dick.com do not infringe trademarks. Its ownership of www.cbs-sucks.com etc is linked to Respondent's free speech website for the registering of consumer complaints.

(e) Respondent owns www.erealestate.com for the purpose of purchasing domains and appraising the valuer of others' domains.

(f) Complainant has failed to prove Respondent's lack of legitimate interest in the domain or that it intentionally attempted to create a likelihood of confusion with Complainant's mark.

**6. Discussion and Findings**

Paragraph 15(a) of the Rules instructs the Panel to:

"decide a complaint on the basis of the statements and documents submitted in accordance [*10] with the policy, these rules and any rules and principles of law that it deems applicable".

The burden for the Complainant, under paragraph 4(a) of the ICANN Policy, is to show:

- That the domain name registered by the Respondent is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;

- That the Respondent has no rights or legitimate interests in respect of the domain name; and

- That the domain name has been registered and is being used in bad faith.

The domain name www.adtsucks.com is, in the judgment of the Panel, confusingly similar to the Complainant's marks. The addition of the sucks does nothing to deflect the impact of the mark on the Internet user.

The addition of the suffix 'sucks' is a crude attempt to tarnish the mark. Although 'sucks' could make an English speaker consider that the name does not promote the Complainant or its products, not every user of the Internet is well-versed in the English language. Consequently, a user could be led to believe that any name using the world-famous mark is associated with the Complainant. In some WIPO cases, a domain name which adds the pejorative term 'sucks' to a well-known [*11] mark has been ordered to be removed. In D2000-0583, Direct Line Group Ltd & Ors v Purge I.T. Ltd, a distinguished Panelist, Professor W R Cornish, ordered the transfer to the Complainant of the domain name

www.directlinesucks.com. He held the name confusingly similar to the mark Direct Line. His rationale, which the majority of this Panel adopts with respect, was as follows:

"The Respondent's registration, consisting of the Complainants' name with the suffix, "sucks" (plus ".com"), is not identical to the Complainants' marks and the question arises whether the registration is confusingly similar to those marks.

Given the apparent mushrooming of complaints sites identified by reference to the target's name, can it be said that the registration would be recognised as an address plainly dissociated from the Complainants? In the Panel's opinion, this is by no means necessarily so. The first and immediately striking element in the Domain Name is the Complainants' name and adoption of it in the Domain Name is inherently likely to lead some people to believe that the Complainants are connected with it. Some will treat the additional "sucks" as a pejorative exclamation and therefore [*12] dissociate it after all from the Complainants; but equally, others may be unable to give it any very definite meaning and will be confused about the potential association with the Complainants. The Complainants have accordingly made out the first element in its Complaint (see the rather similar conclusion on this element in Case D 2000-0477 (www.walmartcanadasucks.com))."

The Panel is aware that there are other decisions by WIPO panelists which have taken a similar approach and others where panelists have concluded that a derogatory word like "sucks" when added to a registered mark does not render the resulting domain name confusingly similar. Unless and until there is some appellate tribunal, this difference of opinion will endure. Although the majority of this Panel can see the contrary arguments, the approach cited above is considered appropriate by the Panel majority.

One member of the Panel considers that "sucks" added to a mark may not be confusingly similar when used as a domain name in a fair use and noncommercial context. However, this is not the case here because the Respondent's disputed domain name website is commercial in nature. Thus this Panel member agrees that [*13] the Respondent's domain name is confusingly similar to the Complainant's marks.

The Complainant must show that the Respondent has no rights or legitimate interests in respect of the disputed domain name. The Respondent does not assume the burden of proof, but may establish a right or legitimate interest in a disputed domain name by demonstrating in accordance with paragraph 4(c) of the Policy:

(a) He has made preparations to use the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services prior to the dispute;

(b) He is commonly known by the domain name, even if he has not acquired any trademark rights; or

(c) He intends to make a legitimate, non-commercial or fair use of the domain name without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark.

The Panel determines that the Complainant has discharged the onus of proof for the second criterion: The Respondent has failed to demonstrate any legitimate right or interest.

Respondent's 'free speech' claim is untenable. The evidence clearly displays a pattern of registering names which include famous marks plus the word 'sucks'. [*14] There is just no evidence of demonstrable preparations for a business, or of any of the other matters which could assist a Respondent under the Policy.

The Panel has no difficulty in finding bad faith registration and use. Respondent has shown a cynical pattern of dealing in domain names with apparent attempt to embarrass the owners of internationally known marks. The fact that Internet users are diverted to the Respondent's sites is evidence of bad faith. That would be so even if the sites were non-pornographic.

Accordingly, the Panel finds the complaint justified.

**7. Decision**

For the foregoing reasons, the Panel decides:

(a) That the domain name registered by the Respondent is confusingly similar to the trademark to which the Complainant has rights;

(b) That the Respondent has no rights or legitimate interests in respect of the domain name; and

(c) The Respondent's domain name has been registered and is being used in bad faith.

Accordingly, pursuant to paragraph 4(i) of the Policy, the Panel requires that the registration of the domain name www.adtsucks.com be transferred to the Complainant, ADT Services AG.

Hon. Sir Ian Barker QC

Presiding Panelist

Mr David E Wagoner [*15]

Panelist

2001 UDRP LEXIS 522, *

Mr Dennis A. Foster

Panelist