UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FAIRBANKS CAPITAL CORP.           *

    Plaintiffs                              *

vs.                                              * CASE NO.:  AMD 02 CV 2587

W. CRAIG KENNEY, et al.              *

    Defendants                           *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM IN SUPPORT OF
MOTION FOR STAY PENDING APPEAL
<u>OR IN THE ALTERNATIVE, FOR MODIFIED INJUNCTION</u>**

On May 6, 2003, the Court issued a preliminary injunction that barred defendants "from using the FAIRBANKS mark:  in all domain names associated with the website, . . .  and . . . in the meta tags associated with their website." Defendant Kenney plans to appeal from that decision, and now seeks a stay pending appeal on the ground that the injunction constitutes a prior restraint, and therefore violates the First Amendment as well as being contrary to the Lanham Act.

**PROCEEDINGS TO DATE**

1. This case arises from a complaint filed against defendants W. Craig Kenney and Brian Barr, seeking injunctive relief and damages based on a web site, "www.conti-fairbanks.com" (hereafter described as "the website"), that Kenney established to criticize Fairbanks' mortgage servicing operations.   Finding that there was some likelihood of confusion, the Court forbade Kenney from continuing to use Fairbanks' name in any domain name or meta tag. However, in rejecting Fairbanks' ACPA claim, the Court recognized that Kenney was making an essentially

noncommercial and bona-fide fair use of Plaintiff's mark. Opinion at 19-21.

  2. In seeking a preliminary injunction, Fairbanks argued that Kenney's use of the Fairbanks name violated the Lanham Act, 15 U.S.C. §1125(a), as a false designation of origin. The crux of Fairbanks' claim was that, coupled with the use of the name Fairbanks in his domain names and meta tags to bring Internet viewers to his web site, the way in which Kenney used the Fairbanks name on the web site itself was likely to confuse consumers who came expecting to find Fairbanks' own web site. However, after the hearing on Fairbanks' Motion for Preliminary Injunction, and in light of a recent appellate decision, *Taubman Company v. Webfeats*, 319 F.3d 770 (6th Cir. 2003), Kenney modified the website to a degree that eliminated any possibility that the web site might be confusing. For example, Kenney eliminated the banner headline "Fairbanks Resource Site," and he added a prominent disclaimer at the top of the page stating that the site was not Fairbanks' official web site, and providing a hyperlink to permit Internet users who desired to go directly to Fairbanks' own official web site to do so without using their "back" button or conducting another Internet search. Kenney promptly notified the Court of the changes. Thus, at the time the Court issued its preliminary injunction, the site was clearly not confusing. The Court apparently recognized that fact because, although it granted the preliminary injunction, its explanation was that it was concerned only with the website as it appeared in February 2003. Opinion at note 3. [1]

  3. Prior to the hearing, Kenney had also registered new domain names using plaintiff's "Fairbanks" name and added the word "sucks" to show his displeasure with them ("here described as the "sucks.com" sites). Plaintiff did not argue that there was any danger that any

---

[1] To preserve the ability of the Court of Appeals to review the injunction in light of the site as it existed at the time it was enjoined, Kenney has moved the Court to add to the record on appeal a CD that contains the entire web site in electronic form.

consumer could be confused about whether these sites were sponsored by Fairbanks. Instead, it argued that, because defendants had been condemned as infringers, plaintiff was entitled under what it called the "dominant portion" rule to obtain extra protection from use of its trademarks, beyond that which the Lanham Act might otherwise afford them. The Court's opinion does not directly address the Lanham Act implications of the "sucks" domain names, but the injunction plainly forbids those as well.

## GROUNDS FOR A STAY

### Balancing the Equities

5. The Court's preliminary injunction is a prior restraint on speech protected by the First Amendment, and therefore is causing immediate and severe irreparable injury to the defendants that cannot be justified by the merely commercial interests of the plaintiff.

6. A judicial decree that forbids speech, on pain of summary punishment by contempt proceedings, constitutes a prior restraint. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994); *Hirshkop v. Snead*, 594 F.2d 356, 358 (4th Cir. 1979). "Prior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment rights." *In re Charlotte Observer*, 921 F.2d 47, 49 (4th Cir. 1990). Accordingly, the order under appeal "bears a heavy presumption against its constitutional validity." *Telco Communications v. Carbaugh*, 885 F.2d 1225, 1233 (4th Cir. 1989). The courts of appeals have been clear and unequivocal in their condemnation of the issuance of prior restraints absent the most compelling circumstances. *Taubman Company v. Webfeats*, 319 F.3d 770 (6th Cir. 2003); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996). The concern that the subject of Kenney's web site might suffer some commercial injury scarcely qualifies – in fact; "private litigants' . . . commercial self-interest" was rejected as a basis for a prior restraint in *Bankers Trust. Id.* The fact that the possible injury would come

from having its conduct described on the Internet, in terms whose truthfulness the Court has never questioned, scarcely increases the compelling nature of the interest supporting the Court's preliminary injunction.

7. Similarly, in *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), the Supreme Court held that an injunction forbidding a community group from distributing leaflets criticizing a local real estate company was an impermissible prior restraint. "No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants the use of the injunctive power or a court." *Id.* at 419. Similarly, the use of the Court's injunctive powers to prevent defendants from discussing on the internet his views concerning the plaintiff's business practices flies in the face of settled law and should be stayed immediately. *Taubman Company v. Webfeats*, 319 F.3d 770 (6th Cir. 2003). Indeed, in *Taubman,* an injunction barring the use of a trademark in the domain name for an Internet gripe site was stayed pending appeal. (*see,* attached order dated March 11 2002).

## Likelihood of Success on the Merits

8. In addition, the Court's rulings pertaining to the likelihood of success on the merits are open to serious question. In light of the fact that the balance of irreparable injuries tips so decidedly in favor of the defendants, that is sufficient to warrant issuance of the stay. Kenney recognizes that the Court has ruled against him on the merits of these issues, and does not desire to belabor merits points that the Court has already rejected. However, in the interest of being fair to the Court before taking the issue of the preliminary restraint to the Fourth Circuit, we offer this summary of our arguments:

a) The Court granted the preliminary injunction on the ground that Kenney's desire to harm Fairbanks' business operations supplied both the necessary commercial nexus to invoke the

Lanham Act, and transformed his criticism into "commercial speech" lessening its First Amendment protections. Neither portion of this decision can withstand scrutiny.

(i) The use of a trademark to denominate the target of criticism is not a violation of the Lanham Act, even if the impetus is to harm the trademark owner commercially. If the mere fact that consumer criticism could harm the target commercially were sufficient to make the trademark use commercial, then Congress' express decision to exempt non-commercial uses from coverage of the Lanham Act, for the precise reason that the First Amendment protects such use, would be rendered nugatory. *Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003); *CPC International. v. Skippy, Inc.*, 214 F.3d 456, 461 (4th Cir. 2000); *L.L. Bean. v. Drake Publishers*, 811 F.2d 26 (1st Cir. 1987).

(ii) In the *Skippy* case, for example, the Court of Appeals overturned an injunction that had been issued against the use of the domain name "skippy.com" for an account posted about the plaintiff's alleged misuse of the trademark laws to "steal" the use of the "Skippy" trademark from the defendant's father. Chief Judge Wilkinson explained that, despite the fact that the criticism arose form a commercial dispute and disparages a commercial operator, the speech itself was not "commercial" and hence enjoyed the highest level of protection under the First Amendment. 214 F.3d 462.

(b) The Court also erred by finding a likelihood of confusion caused by Kenney's use of the Fairbanks name in his domain names, for several reasons.

(i) First, the Sixth Circuit has held that, when a person registers a domain name using the trademark of another company for the purpose of a web site about that company or its trademarked goods, and where the web site itself is not confusing about source and contains a prominent disclaimer of official connection as well as a hyperlink to the

official site, there is not a sufficient likelihood of confusion to warrant a preliminary injunction. *Taubman Co. v. WebFeats,* 319 F.3d 770, 777 (6th Cir. 2003). The web site, as Kenney revised it after the preliminary injunction hearing, is quite similar to the web site at issue in *Taubman*, and so this case is on all fours with *Taubman*. The *Taubman* decision alone, therefore, affords a substantial basis for reversal.

(ii) The concern that domain names containing a trademark pose a risk of confusion arose from the fact that, in the early days of the Internet, the principal means for Internet users to find the unknown web site of a company was to type the company's name into his web browser, followed by a top-level domain such as ".com" This case does not pose any such risk because there is no evidence that Fairbanks has ever operated under the name "conti-fairbanks", not to speak of "boa-fairbanks," "fairbankscomplaint," or any of the other variations that Kenney has registered as his domain names. Therefore, with the possible exception of the domain name "fairbankscapital.net," this case is very different from the existing Fourth Circuit precedents applying trademark law to domain names, in which the domain names were identical to commonly used abbreviations for the plaintiff companies. *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359 (4th Cir. 2001) (about domain name peta.org); *Virtual Works v. Volkswagen of America*, 238 F.3d 264 (4th Cir. 2001) (about domain name vw.com). Both cases also involved defendants who sought to extort a payment from the trademark owner, unlike this case where Kenney simply created an overtly critical web site and never offered it for sale.

(iii) The Court further erred because it enjoined use of the "sucks.com" domain names without making any finding that these names had any potential to confuse

anybody about who sponsors them. There is no infringement without a likelihood of confusion. Moreover, every federal decision with which we are aware that addresses a domain name containing the word "sucks" has held that the domain name was not infringing. *Taubman Co. v. WebFeats,* 319 F.3d 770, 778 (6th Cir. 2003); *Lucent Technologies v. Lucentsucks.com*, 95 F.Supp.2d 528, 535-36 (E.D.Va. 2000); *Bally Total Fitness Holding Corp. v. Faber*, 29 F.Supp.2d 1161 (C.D.Cal. 1998).

      (iv)   The injunction against the use of Fairbanks' trademarks in Kenney's meta tags also flies in the face of established law on trademarks and the First Amendment. The purpose of a meta tag is to denominate the subject of a web page. When the competitor of a company uses the plaintiff's trademark in the meta tags for the competitor's web site, hoping to draw users to a site where only the competitor's product is discussed, the courts have not hesitated to find trademark infringement. However, when a company's mark is used in the meta tags of a web site that is about that company or its products, the courts consistently uphold the defendant's conduct under both the Lanham Act and the First Amendment. *Playboy Enterprises v. Welles*, 279 F.3d 796, 803-804 (9th Cir. 2002); *Bihari v. Gross*, 119 F. Supp. 2d 309, 321 (S.D.N.Y. 2000).

(c) The Court's reasoning appears to suggest that there is nothing about the use of the meta tags or the term "sucks" that was itself actionable, but that the preliminary injunction is justified only because plaintiff's trademarks were part of the meta tags and domain names. However, its preliminary injunction was not worded so narrowly. Instead of simply enjoining Kenney from using specified domain names, the injunction by its terms enjoins him from using websites on the Internet with the Plaintiff's mark, and enjoined him "from using the Fairbanks mark in all domain names associated with the website, . . . and . . . in the meta tags associated with their website." Because it was so broadly written, ordering elimination of "use of the

marks" and not simply non-use of specific domain names or meta tags, Kenney is prevented from using clearly valid domain names and eliminating meta tags which would make it virtually impossible for all but the most sophisticated internet uses from finding his site. In the event the Court did intend the narrower ruling, its order should be rewritten to require **only** that Kenney refrain from using specified domain names without imposing any limit on what may be placed on the Internet using other domain names or meta tags.  Such a revision would be consistent with the general principle that, in light of the potential damage to free speech interests, a preliminary injunction should be the narrowest that is needed to protect the plaintiff's legitimate interests. *Anheuser-Busch v. Balducci Publications*, 28 F.3d 769, 778 (8th Cir. 1994); *Consumers' Union v. General Signal Corp.*, 724 F.2d 1044, 1053 (2d Cir. 1983); *Better Business Bureau v. Medical Directors*, 681 F2d 397, 404-405 (5th Cir. 1982).

## ALTERNATE REQUEST FOR LIMITED STAY

In the event the Court does not grant a stay pending appeal, the Court is requested to grant a limited stay to permit Kenney to present a stay request to the Court of Appeals once his appeal has been docketed there.

## CONCLUSION

The motion for a stay pending appeal should be granted.

Respectfully submitted,

DATED: May 12, 2003                    By:   */s/ Barton J. Sidle*
                                                                                    Barton J. Sidle (#09315)
                                                                                    9515 Deereco Road
                                                                                    Suite 902
                                                                                    Timonium, Maryland 21093
                                                                                    (410) 560-2800
                                                                                    (410) 308-3035 (Fax)

By:   */s/ Peter B. Langbord*
     Peter B. Langbord
     FOLEY & MANSFIELD
     595 E. Colorado Boulevard
     Suite 418
     Pasadena, California 91101
     (626) 744-9359
     (626) 744-1702 (Fax)


By:   */s/ Paul Alan Levy*
     Paul Alan Levy (DC Bar 946400)
     Public Citizen Litigation Group
     1600 - 20th Street, N.W.
     Washington, D.C. 20009
     (202) 588-1000
     (202) 588-7795(Fax)

     Attorneys for Defendant
       W. Craig Kenney