UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Northern Division

| | | |
|---|---|---|
| FAIRBANKS CAPITAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. AMD02CV2587 |
| | ) | |
| W. CRAIG KENNEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTIONS FOR STAY OR MODIFIED INJUNCTION

Introduction

On May 6, 2003, the Court issued a preliminary injunction enjoining defendants W. Craig Kenney and Brian Barr from infringing the registered trademark of plaintiff Fairbanks Capital Corp. ("Fairbanks") on their website, "Conti-Fairbanks.com." After deriding the Court's injunction on their website as a "shocking and outrageous miscarriage of justice," defendants now move for a stay of the injunction pending an appeal to the Fourth Circuit. Yet their motion is little more than a thinly disguised motion for reconsideration, which fails to identify or apply the applicable legal standard for the grant of a stay; re-argues points already correctly decided by the Court; improperly raises new arguments that could have been raised before; and attempts to mislead the Court on factual and legal issues. The Court should deny the request for a stay.

    I.    Defendants Have Failed To Show That They Will Suffer Irreparable Injury If The Injunction Is Not Stayed.

Defendants have provided no basis to stay the preliminary injunction. As a threshold matter, defendants fail to mention that Rule 62(c) of the Federal Rules of Civil Procedure provides the standard for granting a stay of a preliminary injunction pending appeal. The Fourth

Circuit, in <u>Long v. Robinson</u>, articulated four factors to be used in determining whether a stay should issue:

> (1) the likelihood of [the moving party] prevailing on the merits of the appeal;
>
> (2) whether the moving party will suffer irreparable injury if the stay is denied;
>
> (3) whether the issuance of the stay would substantially injure the other parties to the appeal; and
>
> (4) consideration of the public interest.

432 F.2d 977, 979 (4th Cir. 1970). The burden on a party requesting a stay is a heavy one, because the party seeking a stay has already lost the initial determination resulting in the preliminary injunction and the factors are similar. Wright, Miller & Kane, 11 *Federal Practice and Procedure* § 2904 at 503-04, 513-14 (1995). Defendants do not meet this "heavy burden."

In conclusory fashion, defendants claim that the injunction will cause them "immediate and severe irreparable injury." Memorandum In Support of Motion For Stay Pending Appeal Or In The Alternative, For Modified Injunction at ¶ 5 ("Defs. Memorandum"). First and foremost, the Court already has engaged in a thorough evaluation of the potential harm that might inure to defendants as a result of the injunction. <u>See</u> Memorandum Opinion of May 6, 2003 at Section III, ¶¶ 1, 8-9 ("Opinion of May 6"). The Court held that defendants "will not be significantly harmed" by the injunction, because, among other reasons, they can change the website domain name and content with "minimal effort and nominal costs." <u>Id.</u> at Section III, ¶ 8. The Court also correctly noted that defendants (for months now) have been advising visitors to the website to begin accessing the site via www.servicingnews.com.[1] <u>Id.</u> The ten-day grace period before

---

[1] Indeed, in a posting to the website two days <u>before</u> the injunction is to take effect, Kenney and Barr encourage website visitors to promote the website as www.servicingnews.com. Their voluntary use of a new name for the website in advance of the injunction's effective date belies their claims of irreparable harm. <u>See</u> "How To Get TV Coverage In Your Area," May 14, 2003 (attached hereto as Exhibit 1).

2

the injunction takes effect enabled defendants to further inform users of the domain name change. <u>Id.</u> Moreover, as the Court expressly highlighted in its opinion, and which still rings true today, defendants "presented <u>no evidence</u> indicating that they would be specifically harmed from a preliminary injunction." <u>Id.</u> (emphasis added).

Defendants' claim that the injunction is a "prior restraint" is not only untimely—it is also inaccurate. Defendants could have raised the prior restraint argument beforehand, and brought their newly-cited cases to the Court's attention, but they did not do so. Moreover, the injunction does <u>not</u> restrict defendants' ability or right to criticize Fairbanks and it does not affect the content of defendants' message. <u>See</u> <u>Planned Parenthood Federation of America, Inc. v. Bucci</u>, 42 U.S.P.Q.2d 1430, 1997 U.S. Dist. LEXIS 3338 (S.D.N.Y. Mar. 24, 1997) (enjoining unauthorized use of trademark in domain name and elsewhere on website not a violation of First Amendment), <u>aff'd</u> <u>without</u> <u>opinion</u>, 152 F.23 920 (2d Cir. 1998). The injunction does not prevent the defendants from publishing information. <u>Cf.</u> <u>In re Charlotte Observer</u>, 921 F.2d 47, 49 (4th Cir. 1990) (vacating injunction against reporters that prevented publication of the identity of the target of a federal investigation). The injunction merely prevents Kenney and Barr from improperly and confusingly using Fairbanks' trademark to bring additional internet users to their website. Defendants' statement that the injunction somehow "prevent[s] defendants from discussing on the internet [their] views concerning the plaintiff's business practices"—is simply untrue and improperly attempts to mislead the Court about the contents of the record.[2] Defs. Memorandum at ¶ 7; <u>see also</u> Preliminary Injunction of May 6, 2003. The injunction <u>does not</u> address or limit in any way the actual content of defendants' messages. The prior restraint argument is thus both inaccurate and untimely and should be summarily rejected.

---

[2] It appears that defendants simply haphazardly cut-and-pasted several sections of a brief from a completely different case, including this inaccurate statement about the injunction. <u>See also</u> <u>infra</u> at n. 5.

3

    II.       Defendants Have Failed To Show A Strong Likelihood Of
<br>             <u>Prevailing On The Merits Of Their Appeal.</u>

Defendants also attempt to re-argue the likelihood of success question, belaboring issues that the Court has already decided and citing, for the first time, case law that existed prior to the hearing on February 28. Under Fourth Circuit law, a stay should not be granted unless the applicant makes a "<u>strong showing</u> that the [applicant's] appeal is likely to succeed on the merits." <u>Family Foundation, Inc. v. Brown</u>, 9 F.3d 1075, 1076-77 (4th Cir. 1993) (emphasis added). Not only have Kenney and Barr failed to make such a showing, but in fact—as the Court has already decided—it is <u>Fairbanks</u> that has a strong likelihood of success on its claim for false designation of origin under 15 U.S.C. § 1125(a).

    A.       Defendants' Use Of Fairbanks' Trademark Is "In Connection With"
<br>             <u>Goods Or Services Under Established Fourth Circuit Law.</u>

Defendants challenge this Court's finding that their use of the Fairbanks mark is "commercial" by misconstruing both the Court's legal analysis and Fourth Circuit precedent. Under <u>People for the Ethical Treatment of Animals v. Doughney</u>, 263 F.3d 359, 365 (4th Cir. 2001), Kenney and Barr "need not have actually sold or advertised goods or services" on the website to have used Fairbanks' mark "'in connection with' goods or services." Defendants "need only have <u>prevented users</u> from obtaining or using [Fairbanks'] goods or services, <u>or</u> need only have <u>connected the website</u> to other's goods or services." <u>Id.</u> (emphasis added). Kenney and Barr, of course, have done both. Their claim that the "use of a trademark to denominate the target of criticism . . . [and] harm the target commercially" does not establish the requisite commercial nexus under the Lanham Act, even if true, is irrelevant, because defendants' actions satisfy the commercial activity requirement set forth in <u>Doughney</u>. Defs. Memorandum at ¶ 8(a)(i).

4

As the Court specifically found, defendants' website intentionally uses the Fairbanks mark to "deter potential consumers from choosing Fairbanks as their mortgage servicer." Opinion of May 6 at Section III, ¶ 13.  Moreover, the Court specifically recognized (and Kenney conceded) that users seeking Fairbanks' official website "have actually been confused" by the website's confusing misuse of the Fairbanks trademark.  Id. at Section III, ¶ 14.  Likewise, the Court specifically recognized that defendants use the Fairbanks mark "in connection with the advertising of legal referral services and URL links to various housing, mortgage lending, and consumer protection websites."  Id. at Section III, ¶ 10.  In addition, there are numerous commercial links and advertisements on the "Discussion Forum."[3]  These links and advertisements also constitute use "in commerce in connection with the sale of goods or services."  America Online, Inc. v. AOL.org, 2003 U.S. Dist. LEXIS 6899 at *7 (E.D. Va. Apr. 23, 2003) ("It is also clear that the registrants have used the infringing domain name in commerce in connection with the sale of goods or services by linking the name to a . . . web site with further links to pages that promote various Internet and computer-related services.") (emphasis added) (citing Doughney, 263 F.3d at 365).[4]

---

[3] See, e.g., "Escape from your misery," posted on May 6, 2003, by "Gunther Hepperle Wells Fargo Home Mortgage" (attached hereto as Exhibit 2) (posting from Wells Fargo employee soliciting business from dissatisfied Fairbanks customers); "http://www.c-bass.com," posted on June 12, 2002, by "Falcon," attached hereto as Exhibit 3 (link to website of Fairbanks competitor).  Defendants conveniently failed to include the contents of the "Discussion Forum" in the CD-ROM copy of the website they provided to the Court with their Motion to Supplement Record on Appeal, despite Kenney's two affidavits stating that the CD constitutes an "identical" copy of the website.  See Plaintiff's Opposition to Defendants' Motions to Supplement Record on Appeal.

[4] Additionally, defendants attempt to distinguish Doughney by stating that Doughney "involved defendants who sought to extort a payment from the trademark owner, unlike this case where [defendants] simply created an overtly critical website and never offered it for sale."  Defs. Memorandum at ¶ 8(b)(ii).  To establish a claim under § 1125(a), however, an offer to sell a domain name is not a prerequisite for use "in commerce" or "in connection with goods or services."  Defendants are at best confusing § 1125(a) analysis with one of the factors for liability under 15 U.S.C. § 1125(c), the Anticybersquatting Consumer Protection Act ("ACPA").  Despite defendants' inaccurate statement to the contrary, see Defs. Memorandum at ¶ 1, the Court most certainly has not found that defendants' use of the Fairbanks mark is noncommercial by virtue of its ACPA analysis.  Moreover, defendants' argument "opens the door" for consideration of Kenney's $3 million demand to Fairbanks to cease operation of the website, evidence of which was previously ruled inadmissible.

Defendants misstate the holding of CPC International v. Skippy, Inc., 214 F.3d 456 (4th Cir. 2000) by claiming that it "overturned an injunction that had been issued against the use of the domain name 'skippy.com.'" Defs. Memorandum at ¶ 8(a)(ii) (emphasis added).  But Skippy involved an injunction that required removal of specific content from the skippy.com website; the use of the URL itself was not questioned because both companies had trademark rights in the name "Skippy."  Thus, the Skippy court was confronted with an injunction—completely unlike the instant injunction—that required the "wholesale removal" of content from a website.  Skippy did not address the "use" of the domain name skippy.com, and it is inapposite to the instant case. 214 F.3d at 459.

      B.      The Court Properly Held That Defendants' Use Of The Fairbanks Trademark In Conjunction With Defendants' Website Is Likely To Cause Confusion.

Defendants argue that the "Court also erred" in finding that their use of the Fairbanks trademark was likely to cause confusion.  Kenney and Barr completely ignore the Fourth Circuit's express holding in Doughney that confusion can inure from the "domain name alone," and cite to Sixth Circuit precedent instead.  Doughney, 263 F.3d at 366.  The Fourth Circuit has specifically stated that a domain name that uses a company's trademark "does not convey the second, contradictory message needed to establish . . . that the domain name is not related to" the company.  Id.  Moreover, the Sixth Circuit case that defendants rely on, Taubman Co. v. WebFeats, 319 F.3d 770, 777 (6th Cir. 2003), is factually different from the instant case and does not counsel against the issuance of an injunction here.  Defendants have effectively conceded through their "revisions" to the website prior to the preliminary injunction hearing that specific aspects of the site were confusing.  Additionally, the Court specifically and properly considered the website as it appeared in February 2003 and noted defendants' ability to modify the website with speed and ease.  Opinion of May 6 at Section III, ¶ 8.  Without an injunction, defendants

6

could simply change the website back to its original, confusing form.  See Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 800-01 (4th Cir. 2001) (entry of injunction appropriate even though defendant had ceased infringing activities because defendant must show that there is no "reasonable expectation that the alleged violation will recur").  Finally, although defendants claim they have now altered their website to conform to Taubman, that is not the case.  To the contrary, many commercial links and advertisements remain on the website.

Defendants also claim, astonishingly, that there is no risk of confusion from the domain names themselves because the days of internet users typing company names into their web browsers to reach company websites are supposedly past, and because Fairbanks has never "operated under" the names that defendants have selected as URLs (such as "conti-fairbanks," or "bankofamericafairbanks").  First, there is simply no evidence in the record about any changes in internet users' methods of navigation since the "early days of the internet."  Defs. Memorandum at ¶ 8(b)(ii).  The only evidence in the record even related to this issue is Kenney's own deposition testimony, in which he states that in his opinion, "if someone is attempting to find a particular service or subject on the Internet, there are obviously two ways to do it," and that

> The second way, a lot of people do, I do it, is to type into the address line on your browser some combination of words that you think somebody may have, may have chosen to find their web site.

Kenney Dep. at 67 (emphasis added).

Moreover, Kenney himself testified that he chose the domain names specifically because they are evocative of business relationships between Fairbanks and certain companies, in the belief that borrowers would join Fairbanks' name with the name of Fairbanks' business partners when navigating the internet:

7

> Q: Your memory is that you registered those names after you learned of the respective [business] relationships [between Fairbanks and ContiMortgage, Bank Of America, EquiCredit, and CitiFinancial]?
>
> A: Correct, <u>just to make it easier for borrowers to find the website</u>. That was the <u>only purpose</u> of those names being registered.

Kenney Dep. at 61-67 (emphasis added). See also <u>Harrods Limited v. Sixty Internet Domain Names</u>, 302 F.3d 214, 239 (4th Cir. 2002) (holding that registration of multiple domain names that defendant knew were "identical <u>or confusingly similar</u>" to the mark of Harrod's Department Store, including "harrodsbank.com," "harrodsfinancial.com," "harrodsshopping.com," and "harrodsbrazil.com," mitigated in favor of finding of bad faith under ACPA) (emphasis added); 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

Finally, Kenney and Barr claim that the injunction improperly prevents them from using Fairbanks' trademark in their meta data because they are not competitors attempting to divert customers from Fairbanks. Although defendants may not be in the mortgage servicing business, the Court has ruled that they intend to divert customers from Fairbanks' website, just as a Fairbanks competitor would. In addition, the defendants have links and advertisements on their website for Fairbanks competitors. Numerous courts, including courts in this Circuit, have enjoined the use of trademarks in meta data where the effect would be to divert customers and harm the plaintiff financially. See, e.g., <u>Brookfield Communications, Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1039 (9th Cir. 1999); <u>Playboy Enters., Inc. v. Asiafocus, Inc.</u>, 1998 U.S. Dist. LEXIS 10359 (E.D. Va. Feb. 2, 1998). The Court correctly ruled that there is a likelihood of confusion from defendants' use of Fairbanks' registered trademark.[5]

---

[5] As a final point, defendants completely mischaracterize Fairbanks' arguments regarding the so-called "sucks.com" sites. In what appears to be a cut-and-paste from a brief in an unrelated case, defendants state that Fairbanks relies upon the "'dominant portion' rule to obtain extra protection of its trademarks." Fairbanks has never made such an argument, and defendants either do not comprehend, or simply mischaracterizes, Fairbanks' proper reliance on

(continue)

III.	Defendants' Alternative Motions For Modified Injunction Should Be Denied

Defendants have moved the Court to modify the injunction in the event that the Court denies defendants' Motions for Stay, arguing that the injunction makes it "virtually impossible for all but the most sophisticated internet uses [sic] from finding [the] site [sic]." There is absolutely no evidence in favor of this statement in the record. Indeed, as discussed above, there will be no such difficulty, if for no other reason than defendants have been encouraging visitors to the website to commence accessing the site using "servicingnews.com" for several months now. Defendants also have begun advertising "servicingnews.com" as the website's URL in the news media. See Exhibit 1. However, if the Court is inclined to modify its injunction, Fairbanks recommends that it be revised to prevent defendants' use of the Fairbanks trademark in the specific domain names www.fairbankscapital.net, www.conti-fairbanks.com, www.fairbankscomplaint.com, www.boa-fairbanks.com, www.bankofamericafairbanks.com, www.fairbankscapitalcomplaint.com, www.citi-fairbanks.com, www.equicreditfairbanks.com, www.fairbankssucks.com, www.fairbankscapitalsucks.com, and domain names that are confusingly similar thereto; as well as the use of Fairbanks' mark in meta tags associated with defendants' website; in the title of the homepage of defendants' website; and as part of the website owner's contact address. See People for the Ethical Treatment of Animals v. Doughney, 113 F.Supp.2d 915, 922 (E.D. Va. 2000) (ordering even broader prohibition against use of PETA's mark in infringer's domain names), aff'd, 263 F.3d 359 (4th Cir. 2001).

---

(continued)
precedent in trademark law. Moreover, when Kenney's counsel began to argue about using the "sucks.com" domain names, Kenney waived any argument he might have had regarding the "sucks.com" sites because he stopped his counsel and said he would not use such sites "because they are demeaning."

Conclusion

Fairbanks therefore respectfully requests that the Court deny defendants' Motions For Stay Of Preliminary Injunction Pending Appeal Or In The Alternative, For Modified Injunction.

                                          Respectfully submitted,

                                          BAKER & HOSTETLER LLP

Dated: May 15, 2003                              By:   */s/ Mark I. Bailen*
                                                     Frederick W. Chockley (Bar #04278)
                                                     Gary Rinkerman
                                                     Mark I. Bailen (Bar #13805)
                                                     1050 Connecticut Avenue, NW, Suite 1100
                                                     Washington, DC  20036
                                                     (202) 861-1680

                                        Attorneys for Plaintiff