UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FAIRBANKS CAPITAL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. AMD 02 CV 2587 |
| | ) | |
| W. CRAIG KENNEY, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR STAY OR FOR MODIFIED INJUNCTION**

**1. The Balance of Hardships Tips Decidedly in Kenney's Favor.**

Fairbanks argues that Kenney has done nothing to show that he is irreparably injured by the preliminary injunction, but this argument is incorrect. Kenney has shown that the preliminary injunction is directed against his exercise of his free speech rights is an impermissible prior restraint, which is alone a sufficient reason for overturning the injunction because only the most compelling public purposes may support such a restraint, and private business interests of a criticized business have been repeatedly rejected as a sufficient basis for a prior restraint by the Supreme Court and courts of appeals. Instead of showing why its business interests are sufficient, Fairbanks contends the claim of prior restraint is untimely because it was never raised previously. Although we doubt that it was necessary to argue about prior restraint before the Court's injunction was entered, the fact is that Kenney's counsel repeatedly raised his First Amendment defense in this Court, both orally and in writing. *E.g.*, Memorandum In Support of Motion to Dismiss, page 1; Hearing Transcript pages 12-13.

But Kenney's irreparable injury does not rest only on the doctrine or prior restraint. The fundamental issue in the upcoming appeal is how Kenney can call his site to the attention of

Internet users who may be interested in the information and opinions that he wishes to convey. Fairbanks contends that, because most portions of the preliminary injunction are directed to the signposts for the web site rather than its content, there is no harm to Kenney. We reject this distinction, because titles and signposts are protected by the First Amendment just as the words seen on the web site are protected. *Cf. Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989); *Friedman v. Rogers*, 440 U.S. 1 (1979). But even taking Fairbanks' distinction at face value, what Fairbanks is arguing is that Kenney is free to express whatever opinions he wants, so long as he doesn't tell potential Internet users that his site is about Fairbanks. The Internet is so vast, and the number of websites so large, that unless Kenney can use Fairbanks' name to describe his site to potential viewers, his speech will never be noticed.

In *Brookfield Communications v. West Cost Entertainment*, 174 F.3d 1039 (9th Cir. 1999), on which Fairbanks relies, the court used the imagery of signposts next to the highway to appeal to motorists to visit a storefront, where they might stay to buy competing products, to describe the way in which a business competitor might misuse a trademark in the metatags or domain names to mislead Internet users looking for his competitor's product to come to his own where the competitor's product cannot be found. 174 F.3d 1064. Here, though, Kenney is not a competitor of Fairbanks, but rather has a website that is just as much about Fairbanks as Fairbanks' own site is. Kenney's contention on the merits is that he is permitted to use the Fairbanks name to fairly describe the subject matter of his site – that is what domain names and metatags do. In that regard, it is interesting to note that Fairbanks does not even use its name in the description metatags for its own website, and uses the word Fairbanks in its keyword metatags only in passing before going on to use words such as "loans", "servicing" and "mortgage" that describe what it does. *See* attached Exhibit 1.

The highway sign metaphor is inexact, because it is much easier to use the "back" button on an Internet browser to return to the information superhighway when reaching a website that is not what was sought, than it is to drive a car back onto the highway after being misled into using the exit for a competing storefront. But even taking the metaphor on its face, if Kenney cannot use the Fairbanks name to catch the attention of persons whizzing by on the information superhighway to alert them to the existence of his site about Fairbanks, his speech will lose its effectiveness. That is surely irreparable injury.[1]

**B. Kenney's Appeal Is Likely to Succeed on the Merits.**

Kenney is likely to succeed both on his argument that his site is not "commercial speech" and on the argument that his site does not unfairly use the Fairbanks name to create a likelihood of confusion.

1. Our opening memorandum cited the Fourth Circuit's decision in *CPC International v. Skippy, Inc.*, 214 F.3d 456, 461 (4th Cir. 2000) for the proposition that the use of a trademark for commentary about the trademark holder is not "commercial" despite its potential for adverse impact on the trademark. Rather than responding to this point, Fairbanks argues that the focus of that case was on the content of the website rather than the domain name. That argument itself is wide of the mark, but the crucial point is that if the content is not commercial, neither is the use of the domain name. Nor is the Fourth Circuit's later decision in *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359 (4th Cir. 2001), at odds with *Skippy*, both because the parties there simply assumed that the website was commercial, and the point was not argued (instead the issue was whether the use of the name was "in connection with goods or

---

[1]The fact that, as Fairbanks observed, Opp. 9, Kenney has been urging Internet users to start using a new URL to find his site once he complies with the preliminary injunction, does not

services"), and because the extortionate efforts of the defendant to hold the domain name for ransom distinguish the case factually.[2]  Moreover, in a decision issued just today, the Fourth Circuit made clear that a trademark is not "used in commerce" -- and hence used in a manner subject to regulation under the Lanham Act -- unless it is used for the purpose of advertising or selling goods or services, "appurtenant to an established business or trade that is in commerce." *International Bancorp v. Societe des Bains de Mer*, No. 02-1364 (4th Cir. May 19 2003), Slip Op. at 7.  Kenney's site does not sell such services, but simply expresses his adverse opinions about Fairbanks.

    2. We argued in our opening memorandum that, with the elimination of the banner heading "Fairbanks Resource Site" that the Court later found confusing, and the addition of a prominent disclaimer and hyperlink to Fairbanks' own website, Kenney had brought himself squarely within the holding of the Sixth Circuit in *Taubman Co. v. WebFeats,* 319 F.3d 770, 777 (6th Cir. 2003).  Instead of meeting this point, Fairbanks distinguishes *Taubman* **only** on the ground that Kenney's site has some commercial links.  Opp. 7. But *Taubman* has two independent holdings, rejecting the trademark claims directed at www.shopsatwillowbend.com both because the site was noncommercial, 319 F.3d at 775-776, and because the domain name, in conjunction with website, 319 F.3d at 776-777, was not confusing about source, which is of course the only confusion against which the Lanham Act protects.  And, in today's *International*

---

undercut the damage to his free speech rights that are threatened by that injunction.

    [2] Fairbanks errs in trying to distinguish *Skippy* on the merits of the proper use of a trademark as a domain name, on the theory that both parties had trademark rights in the name "Skippy." Although both parties had some rights in the name, what the defendant could not do, under the terms of the pre-existing preliminary injunction, was use the mark "skippy" in connection with peanut butter and other food products. And yet the court allowed the use of the domain name for a website that was **about** the peanut butter maker. Thus, the decision stands

*Bancorp* decision, the Fourth Circuit affirmed a ruling against the use of domain names only after finding that the domain names would likely cause confusion when considered in conjunction with the contents of the website itself. Slip Op. at 36.

Moreover, Fairbanks' memorandum contains a key concession – in stating that plaintiff is worried that without an injunction, Kenney might "change the website back to its original, confusing form," Opp. 7, Fairbanks implicitly concedes that, as revised following the preliminary injunction hearing but before the issuance of the injunction, the website is not confusing. To be sure, Fairbanks argues that a preliminary injunction is still needed to prevent Kenney from reverting to its original, allegedly confusing character; but that argument does not justify an injunction against the current site, only one against eliminating the recent changes. Indeed, in *Taubman*, where the defendant changed his website after he was sued, the Sixth Circuit held that no injunction was needed so long as he did not revoke the changes. 319 F.3d at 775-776 and n3.[3]

To show that the domain names do not create an likelihood of confusion, we pointed out that the domain names at issue in this case are **not** the trademarks by which plaintiff has been known, but rather combine that trademark with other words and hence do not pose the risk that Internet users will reach Kenney's website through "name-guessing"; we pointed out that both of the major cybersquatting cases from the Fourth Circuit involved domain names that **do** consist

---

for the proposition that the use of a domain name to describe the subject but not the author of the website is proper.

[3]Fairbanks argues that voluntary cessation of challenged conduct should not prevent it from obtaining an injunction against the earlier conduct. Opp. 6-7. However, the case cited by Fairbanks involved ordinary commercial pirating of trademarks for use on goods rented in competition with the plaintiff in that cases; the case did not involve an injunction against the exercise of the First Amendment right to use the name of a person being criticized to denominate the topic of the criticism.

solely of the trademarks.   Again, Fairbanks has no response to those cases.  Fairbanks does cite *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214 (4th Cir. 2002), but in that case the domain names were ones that an Internet might sensibly guess when looking for Harrods online, such as harrodsbank or harrodsbrazil.  Given the implicit acknowledgment that Fairbanks has never done business under such names as "boa-fairbanks" or "fairbankssucks", the case is distinguishable.[4]

## CONCLUSION

The motion for a stay pending appeal should be granted, or the injunction should be modified.

Respectfully submitted,

By: __/s/ Barton J. Sidle__
Barton J. Sidle (#09315)
9515 Deereco Road
Suite 902
Timonium, Maryland 21093
(410) 560-2800
(410) 308-3035 (fax)

By: __/s/ Peter B. Langbord__
Peter B. Langbord
FOLEY & MANSFIELD
595 E. Colorado Boulevard
Suite 418
Pasadena, California 91101
(626) 744-9359 (Office)
(626) 744-1702 (Fax)

By: __/s/ Paul Alan Levy__
Paul Alan Levy (DC Bar 946400)
Public Citizen Litigation Group
1600 - 20th Street, N.W.

---

[4]Fairbanks asserts that it has never invoked the "dominant portion" rule.  That exact term was used in the caption for the argument in Fairbanks' Post-Hearing Brief at pages 6-8.

                                          Washington, D.C. 20009
                                          (202) 588-1000

                                          Attorneys for Defendant
                                            W. Craig Kenney

May 19, 2003